UNITED STATES, Appellee,

v.

Sergeant Eric C. STIVERS, 266–13–7151, United States Army, Appellant.

ACMR 8900046.

U.S. Army Court of Military Review.

5 Sept. 1991.

---

For Appellant: Captain Keith W. Sickendick, JAGC, Captain Cynthia G. Wright, JAGC (on brief).

For Appellee: Colonel A.F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Kathryn F. Forrester, JAGC, Major Daniel N. Velling, JAGC, USAR (on brief).

Before NAUGHTON, HOWELL and JOHNSTON, Appellate Military Judges.

## OPINION OF THE COURT

NAUGHTON, Senior Judge:

Contrary to his plea, the appellant was convicted by a military judge sitting as a general court-martial, of committing indecent acts with his daughter, a child under sixteen years of age in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1982) [hereinafter UCMJ]. His approved sentence includes a bad-conduct discharge, confinement for twenty-five months, and reduction to Private E1.

The appellant personally asserts through counsel the following errors: (1) the military judge committed prejudicial error by admitting into evidence the testimony of a social worker as to statements made by the alleged victim; and (2) the evidence is insufficient to sustain the appellant's conviction of committing indecent acts with his daughter. The appellate defense counsel also contends: (3) the military judge erred by failing to advise appellant of the application of the statute of limitations to the charged offense and by failing to secure appellant's election as to waiver or assertion of that defense; and (4) the staff judge advocate erred by failing to respond to trial defense counsel's post-trial submission alleging legal error.

## I. FACTS

The appellant was arraigned on and entered a plea of not guilty to the following offense [1]:

> SPECIFICATION: In that [the appellant], ... did, ... at divers times between 1 March 1985 and 1 December 1987, commit indecent acts upon the body of his daughter ... by fondling her and placing his hands on her breasts and vagina with the intent to gratify the sexual desires of the said Sergeant Eric C. Stivers.

Mrs. Shaver, a neighbor, testified for the Government. She stated that L, the victim, was visiting her home and while she was watching L and her daughter play outside she saw L rubbing her daughter's vagina. Mrs. Shaver called both girls into her house and asked where they had learned such behavior. L first stated that she didn't know then later said she learned it from the girl across the street.

The Government then called the seven-year-old victim, L, established her competence to testify, and offered her as a witness. The appellant did not contest her competence to testify. L identified her breast and genital area as "privates" and testified on direct examination that touching one's private parts was a "bad touch." She then testified that the appellant had given her a "bad touch" on more than one occasion and that no one else had ever given her a "bad touch." She testified that such a touching had occurred "upstairs" in her room when she was six years old. She further testified that both she and her father were awake and sitting on her bed at the time. She demonstrated the touch by "slightly touching her arm in a stroking motion up and down." When asked specific questions in an attempt to further clarify the nature and circumstances of the act, L gave testimony that was alternatively conflicting, unresponsive, or punctuated with repeated I-don't-know's and I-don't-remember's. During cross-examination, L testified that the appellant had never been mean to her and that he had never hit her.

The Government next called Ms. Teresa Gore, a social worker for Child Protective Services of Fairfax County, Virginia, for the purpose of informing the court of certain statements made to Ms. Gore by L. The appellant moved to exclude this witness on grounds that her testimony was not relevant, or probative, and would consist of hearsay.[2] The Government argued that her hearsay testimony was analogous to the medical treatment exception of Man-

---

1. After the defense rested its case, the Government moved, without objection to amend the charge sheet to substitute a date of 15 January 1988 for the date 1 December 1987.

2. Trial defense counsel in fact "objected" to Ms. Gore's testimony. The military judge properly treated trial defense counsel's objection as a motion in limine.

ual for Courts–Martial, United States, 1984, Mil.R. of Evid. 803(4) [hereinafter Mil.R.Evid. 803(4)][3] and thus admissible under Military Rule of Evidence 803(24),[4] the residual hearsay exception. The appellant argued that Ms. Gore's testimony would be irrelevant and offered no probative value.

Prior to ruling on the motion in limine, the military judge directed that Ms. Gore testify regarding the circumstances of L's out-of-court declaration.

Ms. Gore testified that "the law" requires her to report allegations "of possible criminal involvement" to criminal investigative authorities. She further testified that the Child Protective Service's protocol requires a law enforcement officer to accompany her to the home under investigation.[5]

She testified that her role was a "civil investigation" for the purpose of discovering "if the allegations are true, what risk the child is in that particular situation, and to establish what services [including medical assistance] are needed for this family if the allegations have taken place."

Ms. Gore testified that on 23 June 1988, she had received a "referral" over a "hotline" from a neighbor of the family regarding the possible sexual abuse of L. Because her supervisor determined L was not at risk[6] Ms. Gore "made arrangements" with the CID to interview L the following day. Ms. Gore did not give the family prior notice that she would be interviewing L.

Upon their unannounced arrival, Ms. Gore and the CID agent identified themselves and declared their intention to interview L. The appellant's wife initially protested, but after Ms. Gore insisted that she was authorized by law to see and interview L the appellant's wife relented and permitted the interview.

According to Ms. Gore, L was, at the inception of the interview, "very scared." Ms. Gore assured L that she was not in trouble and "calmed her down or at least tried to."

> What I explained to [L] was that I am a social worker and I help the children who have had things that are uncomfortable happen to them, good and bad touches; and that these things happen to a lot of children and that's why I was there, to see if these things happened to her and if not, to teach her what to do if such things did occur.
>
> . . . .
>
> We [L and Ms. Gore] sat down on the floor and talked. I said that I was a Social Worker. I asked her did she know what a Social Worker was. She shook her head no. Then I explained that a Social Worker works with kids ... and that we talk about special things. We talk about good touches and bad touches. And I talk to kids because some kids have had these thing happen to them and other kids haven't and that I was there to help her if these things had happened ...
>
> . . . .

---

3. The medical treatment exception [Mil.R.Evid. 803(4)] to the hearsay rule provides:

   . . . .

   (4) Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general characteristics of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

4. Military Rule of Evidence 803 provides in pertinent part:

   The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

   . . . .

   (24) A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

5. Because Ms. Gore works on a military installation, the appropriate criminal investigative authority was the Criminal Investigation Command (CID).

6. This assessment was based on the fact that the appellant was stationed in Korea at the time.

... so that it never happens again.

Ms. Gore also testified that she had admonished L to tell the truth and stressed the importance of telling the truth lest she get in trouble for telling a lie.

On cross-examination, Ms. Gore testified that the CID special agent was present during the entire interview and took notes. She testified that, at the inception of the interview:

... When I introduced myself, he also sat down on the floor and introduced himself and what he did and why he was there also giving his explanation of who he was.

Ms. Gore testified that she conducted the majority of the interview and the CID agent participated in the interview by interjecting questions from time to time.

The military judge denied the appellant's motion and allowed the testimony under the residual hearsay clause, Mil.R.Evid. 803(24). The military judge found that, although L's testimony in court had established a touching, it was impossible to determine the circumstances of the touching "in view of her inability in a courtroom setting apparently to testify." He concluded that Ms. Gore's testimony was evidence of a material fact and more probative than any other evidence reasonably available.

The military judge found the following indicia of reliability:

... That the purpose for which Ms. Gore conducted the interview was to ascertain the truth and to provide ... help to the child and the family in this case. The child was not aware that Ms. Gore was coming to interview her on the morning that she was interviewed, which I believe indicates an absence of an opportunity that the child either rehearsed her story or was coached on her story. During the course of the interview Ms. Gore stressed that she was there to help the child and also stressed the importance of the child telling the truth. She gave the child an opportunity to recant without fear of punishment and the child continued to stick to the story that she told Ms. Gore. The questioning that was conducted by Ms. Gore was not, ... in any way

suggestive or leading and the story was essentially that of the child. The presence of the CID Agent was incidental and did not influence the trustworthiness of the statement.... The child in her own testimony in court here today indicated no animosity toward her father and demonstrated no motivation of lying or in any way hurting him....

The military judge concluded by stating:

... I believe that the circumstances under which this statement was taken are close in nature to the circumstances in which a physician takes testimony or takes information in the form of a medical history in order to help an individual.

The key is the mind set or the motivation of the patient. What is the patient thinking is the purpose of the interview. Clearly Ms. Gore took great pains to indicate to the child that she was there to help and that it was important that if that help was to be given, that she, Ms. Gore, be told the truth. The child during the course of the interview, according to Ms. Gore, became less resident—reticent, excuse me. And more open about talking to Ms. Gore and her willingness to tell Ms. Gore what happened. This factor, to me, indicates that the child was viewing an instance in which she was supposed to tell the truth and was in fact telling the truth.

Ms. Gore was then recalled and testified as to the details of her 24 June 1988 interview with L. Ms. Gore testified that L told her the appellant touched her on her breasts and crotch area in her upstairs bedroom while she was watching television. The touching consisted of fondling and caressing and occurred when her mother was not at home. She stated that L recalled one of the molestations occurring about two years prior to the interview. After showing how the touchings occurred with anatomically correct dolls, L told Ms. Gore that she had been molested "lots of times." Ms. Gore determined that L had been touched on four separate occasions.

## II. RESIDUAL HEARSAY EXCEPTION

In the case at bar, although the trial counsel made analogies to the medical

treatment exception rule, he resorted to the residual hearsay exception in offering L's statements to Ms. Gore into evidence.[7] The military judge also made analogies to the medical treatment exception rule, but clearly his basis for admitting Ms. Gore's testimony was Mil.R.Evid. 803(24).

On appeal[8] the Government contends that the totality of circumstances surrounding L's statements qualify her statements for admission under the residual hearsay rule, Mil.R.Evid. 803(24). The appellant asserts that L's statements to Ms. Gore possess neither "particularized guarantees of trustworthiness" nor "adequate indicia of reliability" and therefore are inadmissible.

■ A presumption of unreliability adheres to out-of-court statements until rebutted by the proponent.[9] *Bourjaily v. United States*, 483 U.S. 171, 179, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987). When the proponent establishes that a declaration falls within the scope of a firmly-rooted hearsay exception, "[r]eliability can be inferred without more," *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980), and the out-of-court declarations are admissible "without independent judicial certification of reliability." *United States v. Yeauger*, 27 M.J. 199, 202 (C.M.A.1988). *See also United States v. Connor*, 27 M.J. 378, 391 (C.M.A.1989).

The residual hearsay exception is not a "firmly rooted" exception. *United States v. Hines*, 23 M.J. 125, 134 (C.M.A.1986). The rules of evidence require the military judge to make specific judicial findings of "equivalent circumstantial guarantees of trustworthiness."[10] *United States v. Hines*, 23 M.J. at 135; *United States v. LeMere*, 22 M.J. 61, 68 (C.M.A.1986). Generally, the circumstances which will qualify as equivalent guarantees of trustworthiness are for the trial court to determine and appellate courts to review.

■ However, when the declarant is unavailable, the requirements of the confrontation clause of the sixth amendment must be met by showing the statement bears adequate "indicia of reliability." *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980); *United States v. Hines*, 23 M.J. at 134; *accord United States v. Koistinen*, 27 M.J. 279 (C.M.A.1988). In this case L testified at trial and was cross-examined by the trial defense counsel and therefore the Government need only show L's statement to Ms. Gore had equivalent circumstantial guarantees of trustworthiness. *United States v. Owens*, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988); Mil.R.Evid. 803(24); *see also United States v. Spotted War Bon-*

---

**7.** The trial counsel went to some lengths to argue that the circumstances attending L's statements to Ms. Gore were "exactly the same" as those which attend statements to a physician with the exception that a social worker is not "a qualified medical person." (R. 83). The trial counsel concluded, "So it's the same indicia [of] reliability as under the medical history exception."

**8.** The appellate brief submitted by the Government cites *United States v. Williamson*, 26 M.J. 115, 118 (C.M.A.1988), and states that it "will address only Mil.R.Evid. 803(24) as Mil.R.Evid. 803(4) does not apply."

**9.** Hearsay is no more than the in-court reiteration of observations and facts known to another by a witness who has no first hand knowledge; because of its "second hand" nature, hearsay is, in a sense, incompetent. *See* Mil.R.Evid. 602; *see also United States v. Brown*, 28 M.J. 470, 473 n. 1 (C.M.A.1989). Such "untrustworthy" evidence is generally kept from the

trier of fact regardless of its relevance and probative value. *See Chambers v. Mississippi*, 410 U.S. 284, 298, 93 S.Ct. 1038, 1047, 35 L.Ed.2d 297 (1973).

**10.** A legislatively created rule of evidence, the exception was adopted with the intent that it be used "very rarely, and only in exceptional circumstances." S.Rep. No. 1277, 93d Cong., 2 Sess. *reprinted in* 1974 U.S.Code Cong. & Admin.News 7051, 7066. *Accord United States v. Guaglione*, 27 M.J. 268, 274 (C.M.A.1988). The Court of Military Appeals has effectuated the underlying legislative intent by requiring satisfaction of "all prerequisites for use of the residual exception." *Id.*

The prerequisites for admission of evidence under Mil.R.Evid. 803(24) are: (1) an additional showing of materiality, (2) exclusivity ("more probative … than any other evidence which the proponent can procure through reasonable efforts"), and (3) necessity (in the interests of justice and the general purposes of the rules of evidence).

*net,* 933 F.2d 1471 (8th Cir.1991).[11]

In *Idaho v. Wright,* 497 U.S. ——, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), the Supreme Court evaluated the factors necessary to show "equivalent circumstantial guarantees of trustworthiness" under the residual hearsay exception in a child abuse case. " 'Particularized guarantees of trustworthiness' must be shown from the totality of the circumstances ... [which] include only those that surround the making of the statement and that render the declarant particularly worthy of belief." 110 S.Ct. at 3148. Thus, "hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." 110 S.Ct. at 3150. The Court enumerated the following list of factors, expressly intended as nonexclusive, for deciding whether a child's hearsay statements are reliable: spontaneity of the statement; consistent repetition of the statement; mental state of the child-declarant; use of terminology unexpected of a child of similar age; and lack of motive to fabricate. *Id.* The Court declined to endorse a mechanistic test for finding "particularized guarantees of trustworthiness," and held that "the unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made." *Id.*

■ Reviewing the instant case in light of judicial precedent and the foregoing analysis, we find that L's hearsay statements to Ms. Gore were admissible under the residual hearsay exception.

Several of the military judge's findings of fact do suffice as "indicia of reliability." These findings include: the fact that L's

testimony in court indicated no animosity towards the appellant or motive for lying; that it was improbable that L had been rehearsed or coached prior to the interview; that Ms. Gore stressed she was there to help and reminded L of the importance to tell the truth; that Ms. Gore's questioning was not "in any way suggestive or leading and the story was essentially that of the child"; and that L did not recant her accusations when offered the opportunity to do so free from penalty. The military judge's decision to admit Ms. Gore's testimony was correct.

### III. INTENT TO COMMIT INDECENT ACTS

■ In his second assignment of error, the appellant specifically contends that the Government did not prove beyond a reasonable doubt that the appellant was guilty of indecent acts with a child. The appellant contends that there is no evidence that he intended to satisfy his sexual desires by putting his arm around his daughter.[12] We disagree.

The appellant admitted fondling his daughter on four or five occasions "as a prelude to intercourse" and admitted that his intent was to become sexually aroused. He further stated that he was half asleep and mistook his daughter for his wife. He also admitted that his wife never slept with him on the downstairs couch, but that his daughter often did when she was afraid. The military judge was in the best position to assess the credibility of the appellant. This purported mistaken identity defense may have fallen on receptive ears had the appellant's actions occurred on one occasion. The military judge was not required to accept the appellant's explanation that

11. Assuming *arguendo* that L was found to be unavailable for constitutional purposes we find L's statements to Ms. Gore contained "particularized guarantees of trustworthiness." *Idaho v. Wright,* 497 U.S. ——, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).

12. Manual for Courts–Martial, United States, 1984, Part IV, paragraph 90c. [hereinafter MCM, 1984] explains and defines indecent acts with another: " 'Indecent' signifies that form of

immorality relating to sexual impurity which is not only grossly vulgar, obscene, and repugnant to common propriety, but tends to excite lust and deprave the morals with respect to sexual relations." One of the elements of the offense of committing indecent acts with a child is:

(d) That the accused committed the act with the intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of the accused, the victim or both; ...

MCM, 1984, Part IV, paragraph 87b.(1).

he had mistaken his daughter's identity on four or five occasions.

After viewing the evidence in the light most favorable to the Government, we find that the military judge could have found beyond a reasonable doubt the essential elements of this offense. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Reviewing the evidence in the record of trial for factual sufficiency, and making allowances for not having personally observed the witnesses, we are convinced of the appellant's guilt beyond a reasonable doubt. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987).

## IV. STATUTE OF LIMITATIONS

■ Appellant next contends that the military judge erred by failing to advise appellant of the application of the statute of limitations to the Specification of the Charge and by failing to secure appellant's election as to waiver or assertion of that defense. We agree only to the limited extent that minor corrective action is required in our decretal paragraph to properly reflect appellant's conviction for a period of time not barred by the two-year statute of limitations then in effect, *i.e.*, 14 November 1986 to on or about 15 January 1988. The testimony of the accused on the merits clearly indicates that the fondlings of his daughter were four or five in number and were spaced somewhere between two weeks and four months apart. The victim's testimony reflects that several indecent acts were committed during the period not barred by the statute of limitations.

## V. POSTTRIAL SUBMISSIONS

■ We also agree with appellant's contention that the staff judge advocate erred by failing to respond to trial defense counsel's Rule for Courts–Martial 1105 posttrial submission alleging legal errors. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 1106(d)(4). These allegations were that the appellant's sentence was too severe; that the evidence was insufficient; and that inadmissible hearsay [Ms. Gore's testimony] was improperly introduced at trial. In this case we find the allegations of legal error clearly had no merit. Accordingly, the failure of the staff judge advocate to comply with Rule for Courts–Martial 1106(d)(4) was harmless and does not require a new review and action. *United States v. Hill*, 27 M.J. 293 (C.M.A.1988).

We affirm only so much of the approved findings of guilty of the Charge and its Specification pertaining to time, as finds the offense was committed from 14 November 1986 until on or about 15 January 1988. The sentence is affirmed.

Judge HOWELL and Judge JOHNSTON concur.