OPINION OF THE COURT
LANE, Judge:
Contrary to his pleas, the appellant was convicted by a general court-martial composed of officer and enlisted members of one specification of sodomy with his then three-year-old daughter, in violation of Article 125, Uniform Code of Military Justice, 10 U.S.C. § 925 (1988) [hereinafter UCMJ], The convening authority approved the adjudged sentence to a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to Private El.
The appellant asserts, inter alia, that the military judge committed prejudicial error in permitting a school nurse to testify that the now six-year-old daughter stated that the appellant had sodomized her. We agree.
I. Facts
The appellant and his wife were married in 1985. At that time, Mrs. Dunlap had an eighteen-month-old daughter, S.[1] In 1986, the Dunlaps had their first child, a daughter T. Soon thereafter, the appellant was transferred to Japan. He was accompanied by his wife and T.
In April 1992, six-year-old T saw a puppet show at her school in Japan. The show was designed to portray children who were the victims of sexual and physical abuse or neglect; each puppet represented a different form of abuse. The show was followed by a brief discussion of the problems faced by each of the puppets. Mrs. 0, the school nurse, acted as the presenter/facilitator for the show. The children were told that if they were aware of a problem like those in the show, they needed to talk to Mrs. 0 so that it wouldn’t continue to happen. After the show, the teacher gave each child a piece of paper with ‘Yes” and “No” on it. They were told to circle ‘Yes” if they wanted to talk to Mrs. 0 about the show. T circled ‘Yes” on her paper.
Two days later Mrs. 0 talked with T in the back of the classroom. Mrs. 0 reminded T of the show and marking “Yes” on the paper, and then asked if T had a problem she wanted to talk to her about. T said she had “spots on her face,” like a puppet illustrating child neglect. Mrs. 0 told T that she didn’t have spots that day, but looked very nice instead. Mrs. 0 then asked what happened tó T when she got into trouble at home; T said she was sent to her room or spanked. Mrs. 0 next reminded T about the puppet which had been touched in its “private parts,” and asked T if that had ever happened to her.[2] T related an incident when the babysitter touched and scratched her genital area with her fake fingernails, and how she told her mother who took her to the hospital. Mrs. 0 then asked “has anything else ever happened to you like that?” T said that her father had put his “private part” in her and her sister’s mouths and “gone to the bathroom,” and they had to rinse their mouths out. She asked T if this had happened in Japan. T said yes, but that her mother doesn’t let it happen anymore. Mrs. 0 then terminated the discussion because she did not want “to get into it a whole lot in the classroom.”
Two days later, after talking to her mother about her talk with Mrs. O, T told Mrs. 0 that what she had said about her father was a lie her grandmother (Mrs. Dunlap’s mother) had told.
II. Motion in Limine
Due to T’s recantation, the government planned to offer Mrs. O’s testimony as to T’s *835 statement under both the medical treatment exception[3] and the residual exception [4] to the hearsay rule. The defense filed a motion in limine seeking to have the statement excluded. They contested the use of the medical treatment exception on the bases that Mrs. 0 was seeking to identify and report abuse, not treat the students, and that T had no expectation of treatment at the time. They contested use of the residual exception on the grounds that the statement failed to meet the trustworthiness and probativeness requirements.
T testified on the motion, after the military judge determined she was competent to tell the truth and to testify about body parts. When asked if “anybody” ever touched her “private,” she said “[o]ne person” who turned out to be the babysitter. She responded negatively to a series of questions about any other person, including her “daddy,” touching her private parts. She responded “No” when asked if she went to Mrs. 0 for help, if she had any problem that she needed help with, if she asked Mrs. 0 to do anything to help her, and if she expected Mrs. 0 to do anything to help her. In response to questions by the military judge, T stated that the puppet with spots had ehickenpox, and that it was her sister, not she, who had had chickenpox like the puppet.
Mrs. Dunlap also testified on the motion, saying that she knew about child abuse from her Child Development Service work. While she was aware of the puppet show and interview, she added little more than her own assertion that the appellant had not abused T.
The military judge admitted Mrs. O’s testimony under both exceptions. As to the medical treatment exception, he found that T knew that Mrs. 0 was the school nurse and thus someone who “takes care of you.” He also found that the thrust of the puppet show was to get help and that T marked “Yes” to get help. As to the residual exception, he found guarantees of trustworthiness in that T indicated a desire to talk immediately after the show, that T spoke easily to Mrs. 0, and that her responses were spontaneous.
III. Medical Treatment Exception
Military Rule of Evidence 803 promulgates twenty-three enumerated classes of hearsay that are not excluded by the hearsay rule when the declarant is available as a witness. One of these is a statement made for “purposes of medical diagnosis or treatment.” Mil.R.Evid. 803(4). There are two conditions precedent to admissibility of hearsay under the medical treatment exception: (1) the statement must be made for the purpose of medical diagnosis or treatment; and (2) the patient must clearly make the statement with some expectation of receiving a medical benefit or treatment. United States v. Williamson, 26 M.J. 115 (C.M.A. 1988); United States v. Fink, 32 M.J. 987 (A.C.M.R.1991). In United States v. Quigley, 35 M.J. 345, 346-347 (C.M.A.1992), the court enumerated five “foundational facts” required by Mil.R.Evid. 803(4), to wit, that a statement: (1) was made; (2) near the pivotal time of events; (3) to an individual who could render medical care; (4) by one expecting to receive medical care from that person; and (5) refers to the person’s mental and emotional condition. If the “patient” does not realize, at the time of the statement, that he or she is being diagnosed or treated, the statement is not admissible under this exception. United States v. Avila, 27 M.J. 62 (C.M.A.1988), cert. denied, 493 U.S. 1002,110 *836 S.Ct. 562, 107 L.Ed.2d 557 (1989). The underlying premise of the exception is that a person seeking help from a medical professional will be truthful because it will promote his or her well-being. United States v. Edens, 31 M.J. 267, 269 (C.M.A.1990); United States v. Dean, 31 M.J. 196, 203 (C.M.A. 1990), cert. denied, 499 U.S. 906, 111 S.Ct. 1106, 113 L.Ed.2d 215 (1991). We hold that T’s statement to Mrs. O fails to meet the test for admission under Mil.R.Evid. 803(4) because T was not seeking diagnosis or treatment.
While the puppet show obviously triggered some memories in T’s mind, there is no evidence that these thoughts generated a desire for treatment. While T may have perceived Mrs. O as a person who could help with cuts or scratched knees, there is no evidence that she was actually seeking or expecting treatment for sexual abuse. See United States v. Fink, 32 M.J. at 991 (child went to school nurse on her own, motivated by desire for help and distressed by father’s acts, two of which had occurred in past twenty-four hours). There was no discussion about Mrs. O’s role, or how T needed to be truthful so that Mrs. O or a doctor could help her. United States v. Edens, 31 M.J. at 268 (child understood both reason for and seriousness of talk with doctor); United States v. Avila, 27 M.J. at 66 (statement to doctor who introduced self as “Kathy” and as “just another mommy” inadmissible under this exception).
In fact, Mrs. O testified that she told the children they should tell someone about these matters so that it could be stopped, not so that they could receive personal medical treatment. T’s first thought at the time was of her sister having had spots like one of the puppets. While Mrs. O did not know this at the time, it points out that she was untrained to conduct both a diagnostic session and obtain reliable information from a child. When prompted to think about sexual abuse, T’s first thought was of the babysitter incident, a circumstance requiring no treatment or help from Mrs. O. As to T’s comment about her father, there is no evidence of any emotional or mental conditions needing treatment.
The totality of the situation clearly shows that T did not know that Mrs. O was rendering care and needed accurate, honest information in order to help. In her testimony during the motion, she denied seeking or expecting help. The session was not conducted in a medical office where one normally goes for treatment. See United States v. Dean, 31 M.J. at 204. Furthermore, the statement is well past the “pivotal point” of the alleged abuse, which supposedly occurred three or four years before. Thus, the rationale for the medical treatment exception “disappears entirely.” United States v. Avila, 27 M.J. at 66.
IV. Residual Hearsay
A hearsay statement not specifically covered by one of the twenty-three enumerated exceptions may be admissible if it has, inter alia, “equivalent circumstantial guarantees of trustworthiness.” Mil.R.Evid. 803(24). This residual exception to the hearsay rule is to be rarely used, and is intended to apply only to highly reliable evidence. United States v. Giambra, 33 M.J. 331, 334 (C.M.A.1991); United States v. Wiley, 36 M.J. 825, 829 (A.C.M.R.), pet. denied, 38 M.J. 203 (C.M.A.1993). The central focus in this exception is on the guarantees of trustworthiness. 2 McCormick on Evidence § 324, at 362-363 (John W. Strong ed., 4th ed. 1992). These guarantees must be shown by the totality of the circumstances surrounding the making of the statement and rendering the declarant particularly worthy of belief. Idaho v. Wright, 497 U.S. 805, 817-19, 110 S.Ct. 3139, 3148, 111 L.Ed.2d 638 (1990); United States v. Clark, 35 M.J. 98, 106 (C.M.A.1992); United States v. Stivers, 33 M.J. 715, 721 (A.C.M.R.1991). “[Hjearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial.” Idaho v. Wright, 497 U.S. at 822, 110 S.Ct. at 3150.
This court has adopted certain “indicia of reliability” enumerated by the Supreme Court, to wit: the spontaneity of the statement; the consistent repetition of the statement; the mental state of the childdeclarant; the terminology used; and the lack of a motive to fabricate. United States *837 v. Stivers, 33 M.J. at 721 (citing Idaho v. Wright, 497 U.S. at 821-23, 110 S.Ct. at 3150). The government has the burden, as the proponent, of demonstrating that the proffered statement possesses sufficient indicia of reliability to overcome the presumptive unreliability of out-of-court statements. Idaho v. Wright, 497 U.S. at 825-29, 110 S.Ct. at 3152-3. The decision to admit residual hearsay evidence rests within the sound discretion of the military judge, and will be reversed only for an abuse of that discretion. United States v. Lyons, 33 M.J. 543, 547 (A.C.M.R.1991), aff'd, 36 M.J. 183 (C.M.A.1992). We hold that the government failed to meet its burden with respect to T’s statement to Mrs. 0, and that the military judge thus erred in admitting the testimony.
The military judge based his ruling on T’s “spontaneity,” finding that T indicated a desire to talk immediately after the puppet show and that her statements to Mrs. 0 were not the product of leading questions. The Supreme Court has warned, however, that “it is possible that ‘[i]f there is evidence of prior interrogation, prompting, or manipulation by adults, spontaneity may be an inaccurate indicator of trustworthiness.’ ” Idaho v. Wright, 497 U.S. at 826-27,110 S.Ct. at 3152 (citation omitted). We begin with the fact that T was moved to act by the puppet show, an outside influence designed to cause children to focus on abuse. By its very purpose, it is likely to be suggestive. However, the record is devoid of any discussion of the puppet show, in terms of either its substance or procedure. Mrs. O was not questioned in any detail, and no one else who saw the show testified about its content or impact. Thus, there is no way for this court (or the military judge) to assess its degree of suggestiveness, if any. The teacher, present during the show and the one collecting the requests to see Mrs. O, was not called to testify, even though there was a hint that she observed significant conduct on T’s part at the time.[5]
We agree with the military judge that the questions asked by Mrs. O were not leading questions, nor is there any indication that she put words in T’s mouth. But had she been trained in dealing with these types of situations[6] she would have realized the need to develop facts and circumstances surrounding the bare allegation of abuse in order to give it real substance. Other than to ask if it had occurred in Japan, there was no attempt to pin down when or where the abuse occurred, where the mother was, who else was aware of the abuse, whether T understood the seriousness of her statement and need for absolute truthfulness, or the like. All would have helped the trial court evaluate the reliability of the allegation. We also have been presented with no testimony concerning how T acted during the interview, and especially whether there was any visible change in attitude, tone or mannerisms when moving from the story about the babysitter to that about her father.
Returning to the five Stivers factors, we see that while the terminology used by T is childishly naive, without any signs of coaching by an adult, there is a hint that it could have been the product of an outside source, namely the grandmother. Again, we are without real evidence upon which to judge this point, as the grandmother was not called to testify. As to the other factors — mental state, motive to fabricate, consistent repetition, and spontaneity — the government has not provided any factual evidence. Whether they can, given the quality of Mrs. O’s interview, is a matter for speculation. We will not affirm on speculation.
In view of our action on this issue, the remaining assertions of error, to include those raised personally by the appellant pur *838 suant to United States v. Grostefon, 12 M.J. 431 (C.M.A.1982), need not be addressed.
The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.
Senior Judge WERNER concurs.

. S lived with Mrs. Dunlap's mother except for a short period immediately after the marriage and a longer period in 1988-89. At the trial in this case, the appellant was charged with rape and indecent acts involving S during the latter period, but was acquitted on those specifications.

. Mrs. O also related that she specifically asked T if she knew what her “private parts" were. Mrs. O said that she explained that they are what a two piece bathing suit covers.

. Military Rule of Evidence 803(4) [hereinafter Mil.R.Evid.] excepts from the hearsay exclusion those
[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

. Mil.R.Evid. 803(24), in pertinent part, excepts from the hearsay exclusion [a] statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

. Mrs. O started to testify concerning a comment the teacher made to her about T at the time T handed in the “Yes-No” paper, but this was properly excluded as hearsay. Unfortunately, because the teacher was not called as a witness, the court was deprived of potentially helpful evidence relating to T’s mental and physical state at that time. This evidence could have provided a vital indicium of reliability.

. This case points up a very important aspect of developing child abuse cases — the need for a trained professional. If a school or other organization is going to use a puppet show or other device to surface cases of abuse, then it had better also have personnel specifically trained in dealing with child abuse problems to do the follow-up counseling.