UNITED STATES

v.

**Master Sergeant Jose M.C.R. URETA, FR562–94–6699 United States Air Force.**

**ACM 30274.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 21 Aug. 1992.

Decided 3 Nov. 1994.

Appellate Counsel for Appellant: David R. Dowell (argued), Colonel Jay L. Cohen, Lieutenant Colonel Frank J. Spinner, and Captain Robert I. Smith.

Appellate Counsel for the United States: Major Barnard N. Madsen (argued) and Colonel Jeffery T. Infelise.

Before DIXON, YOUNG, and BECKER, Appellate Military Judges.

OPINION OF THE COURT

BECKER, Judge:

Despite his pleas, a general court-martial composed of members convicted the appellant of one specification of rape and one specification of carnal knowledge in violation of Article 120, UCMJ,[1] and one specification of indecent acts with a child in violation of Article 134, UCMJ.[2] In each instance, the appellant's alleged victim was his adolescent daughter, whom we will refer to as "K." The court sentenced the appellant to a bad-conduct discharge, confinement for 10 years, and reduction to the grade of E-1. Appellant makes twelve assignments of error, four of which we will discuss. Three of these allege the military judge erred in admitting statements of K into evidence as exceptions to the rule against hearsay. The other alleges the military judge erred by ruling on a motion for a finding of not guilty as to the rape specification in such a way that he created a new specification alleging carnal knowledge. We resolve all of the hearsay issues against the appellant, and affirm his convictions of rape and indecent acts. However, we find the military judge committed plain error requiring us to set aside the carnal knowledge conviction and dismiss that specification. This, in turn, requires us to reassess the appellant's sentence.

1. 10 U.S.C. § 920 (1988).

2. 10 U.S.C. § 934 (1988). The accused was found not guilty of a specification alleging at-

I. BACKGROUND

K and her family lived on Rhein–Main Air Base, Germany. On the afternoon of 17 March 1992, K (who was, at this time, 13 years old) confided to her best friend, JH, that her father had been "messing" with her and that she did not want to go home. JH asked if K wanted to talk to JH's mother, and K agreed. After listening to K, Mrs. H contacted Security Police at Rhein–Main. Mrs. H and K eventually were referred to Special Agent Dick of the Rhein–Main detachment of the Air Force Office of Special Investigations (AFOSI). Agent Dick and another AFOSI agent interviewed K for about thirty minutes, during which K repeated her accusations of sexual abuse by her father. Agent Dick then asked K if she would consent to a medical examination, informing K that these types of allegations required the gathering of medical evidence. K agreed.

On 18 March 1992, Agent Dick and Mrs. H accompanied K to the Rhein–Main base hospital where K saw Doctor Boos, an Air Force pediatrician. Before K's arrival, AFOSI had briefed Doctor Boos on K's allegations. Doctor Boos had experience in cases of suspected sexual abuse of children, to include an appreciation that what K told him might be admissible as evidence in a subsequent court-martial. When K arrived at the hospital, Doctor Boos introduced himself to her as a pediatrician. He informed her that he needed to find out if any harm had come to her, if she was hurt, if she had caught any infections or had other medical problems, and, to do his best job, he needed to hear her story. K then told Doctor Boos that her father, the accused, had been touching her sexually and having sexual intercourse with her since she was nine years old. K also described to Doctor Boos physical abuse by her mother. Doctor Boos conducted a pelvic examination of K, which revealed notching of K's hymen and a papule located on her labia majora. According to Doctor Boos, the condition of K's hymen was consistent with sexual intercourse and the papule might have been

tempted forcible sodomy under Article 125, UCMJ (10 U.S.C. § 925 (1988)).

caused by a sexually transmitted virus. However, the notching of the hymen could have been caused by something other than sexual activity, and the cause of the papule could not be confirmed because K had declined to appear for further examinations. Doctor Boos also took specimens and ordered tests for other sexually transmitted diseases, which yielded negative results.

Following Doctor Boos' examination, K, Mrs. H, and Agent Dick returned to the AFOSI office. K was again interviewed and repeated the allegations of sexual abuse by her father. This time, Agent Dick recorded the interview on videotape.

Also on 18 March 1992, K met with Captain Rohback, a social worker assigned as Family Advocacy Officer at Rhein–Main. Air Force regulations required Captain Rohback to gather information on allegations of child sexual abuse, formulate risk assessments, and provide therapy and other treatment as needed. Captain Rohback introduced himself to K, and informed her that he needed to gather information relating to her allegations. He told K that his purpose was to assess the risk she faced, help protect her, assist her in dealing with complications, discomfort and emotional problems, and provide for any treatment she might need. Captain Rohback told K that he needed to understand from her why she was out of her home, and that listening to her would help him understand her needs. K then described acts of sexual abuse by her father, consistent with what she had told Doctor Boos and Agent Dick. Captain Rohback and K met five more times, on 19 and 20 March, 9 and 13 April, and 19 May 1992. During these sessions, K reaffirmed her descriptions of sexual abuse by the accused. She also related attempts by other family members to persuade her to take back her accusations.

Charges of rape, attempted forcible sodomy, and indecent acts with a child were preferred against the accused on 23 March 1992. Shortly before the Article 32, UCMJ,[3] investigation into the charges, K retained the services of an American civilian lawyer practicing in Germany. On K's behalf, this lawyer submitted a letter to Air Force legal authorities to the effect that K would assert her right under German law to refuse to either testify or submit to interviews concerning allegations against her father. Attached to this letter was a statement, apparently signed by K, recanting all of her prior accusations of sexual abuse. In this statement, K said she had made up the "lies" as a means of forcing her father to pay attention to the abusive situation created by her mother.

In an initial Article 39(a), UCMJ,[4] session, the defense moved in limine to exclude various hearsay declarations from K, including the videotaped interview with AFOSI and her statements to Doctor Boos and Captain Rohback. Both sides agreed that K could not be compelled to testify against her father under German law, that the prosecution had attempted to obtain K's presence by sending a letter and invitational travel orders to her through her attorney, and that K had not responded. In addition, civilian defense counsel stated "I will concede on behalf of the defense for purposes of your ruling on availability versus unavailability, that as a factual matter were [K] to be called to the stand she would refuse to testify." R 12. The military judge eventually ruled that K was unavailable as a witness.

After hearing testimony from Doctor Boos and Agent Dick, and making essential findings of fact,[5] the military judge admitted K's videotaped interview under the so-called "residual hearsay" exception at Mil.R.Evid. 804(b)(5), and her declarations to Doctor Boos as statements for purposes of medical diagnosis or treatment under Mil.R.Evid. 803(4). The trial counsel announced that he did not intend to offer testimony from Captain Rohback, and the military judge did not rule on that aspect of the defense motion. Later in the trial, however, the court members requested Captain Rohback's testimony. The defense renewed its objection. After hearing Captain Rohback's testimony in an Article 39(a) session and making essential

3. 10 U.S.C. § 832 (1988).

4. 10 U.S.C. § 839(a) (1988).

5. See Rule for Courts–Martial (R.C.M.) 905(d).

findings of fact, the military judge admitted K's declarations to Captain Rohback as statements for purposes of medical diagnosis or treatment under Mil.R.Evid. 803(4).

At the close of the prosecution's case-in-chief, the defense moved for a finding of not guilty to the rape specification. That specification alleged the accused had raped K at divers times from on or about 26 September 1989 to on or about 16 March 1992. Defense counsel argued that K's statements did not establish penetration or force, both essential elements of the crime of rape. The military judge found sufficient evidence of penetration to deny the motion on that ground. However, he determined that K had described only one act of forcible intercourse. Therefore, with the assent—indeed, the active assistance—of the defense, the military judge broke out a brand new "specification 2" of Charge II, which alleged carnal knowledge at divers times from on or about 26 September 1989 to on or about 15 March 1992. Apparently, the military judge and all counsel were under the impression that carnal knowledge was a lesser-included offense of rape.[6] After arguments and instructions, the members returned findings of guilty to the rape specification (now alleging a lone act on or about 16 March 1992) and the "new" specification alleging carnal knowledge, as well as to the specification alleging indecent acts.

6. The military judge later instructed the members that carnal knowledge was a lesser included offense of rape. R 478–479. The defense counsel expressly concurred in this instruction. R 347.

7. 10 U.S.C. § 866(c) (1994).

8. We question, as did the military judge, whether K had a legal right to refuse to testify. Accepting the parties' agreement that German law conferred a privilege not to testify *against* her father, we nonetheless note that K's position as of trial was that she had lied to Doctor Boos, Captain Rohback and Agent Dick. How German law may have accorded her the right to refuse to testify *on her father's behalf* is not clear. Moreover, under American law at least, it is the law of the *forum* which controls whether a privilege exists. *United States v. Parker*, 15 M.J. 146, 151 (C.M.A.1983); *Pritchard–Keang Nam Corp. v. Jaworski*, 751 F.2d 277, 281 (8th Cir.1984), *cert. dismissed*, 472 U.S. 1022, 105 S.Ct. 3491, 87 L.Ed.2d 625 (1985). The Military Rules of Evidence recognize no parent-child testimonial privilege. *See* Mil.R.Evid. sec. V. Because the parties agreed that K was "unavailable," this concern is not adequately addressed in the record. In his findings supporting his denial of the defense motion *in limine* to exclude the 18 March 1992 videotaped interview, the military judge found that, under German law, the defense could have compelled K to testify *for* her father and, therefore, the accused's Sixth Amendment confrontation rights were not infringed. However, there is insufficient evidence of record to support this conclusion, and we will disregard it. We do not consider the accused to have, in any way, waived or forfeited his confrontation rights. In any event, the appellant has conceded K's unavailability, both at trial and before this court. The record also supports an inference that K was unavailable under Mil.R.Evid. 804(a)(5), and the military judge's findings to that effect are not clearly erroneous. Accordingly, in addressing the admissibility of K's videotaped AFOSI interview under Mil.R.Evid. 804(b)(5), we consider K to have been "unavailable as a witness."

## II. HEARSAY

### A. Standard of Review

In deciding whether the admissions of K's hearsay declarations were proper, we do not put ourselves in the shoes of the military judge to see if we would have made the same ruling. Rather, our review of a military judge's decision to admit evidence is limited to whether he has abused his discretion. *United States v. Dorsey*, 38 M.J. 244, 246 (C.M.A.1993); *United States v. Ortiz*, 35 M.J. 391, 393 (C.M.A.1992). In doing so, we ordinarily defer to the military judge's findings of fact unless they are unsupported by evidence of record or clearly erroneous. *United States v. Quigley*, 40 M.J. 64, 66 (C.M.A.1994); *United States v. French*, 38 M.J. 420, 425 (C.M.A.1993); *United States v. Evans*, 37 M.J. 867, 868 (A.F.C.M.R.1993). However, we have an independent duty to affirm only those convictions and sentences which are correct in law and fact. Article 66(c), UCMJ.[7]

Because K was not available to testify at the trial,[8] the admission of her hearsay declarations raises issues under the Confrontation Clause of the Sixth Amendment to the United States Constitution. Our approach to the confrontation issue differs depending on the rule of evidence relied upon in admitting K's declarations. If an exception to the rule

against hearsay is one of the so-called "firmly rooted" exceptions, then compliance with the evidence rule alone will satisfy the Confrontation Clause. *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). If, however, the rule involved is not one of the "firmly rooted" hearsay exceptions, then the statement must be examined, over and above the minimum requirements of the evidence rule, for "particularized guarantees of trustworthiness" which make the statement so trustworthy that adversarial testing would add little to its reliability. *Idaho v. Wright*, 497 U.S. 805, 819–820, 110 S.Ct. 3139, 3148–3149, 111 L.Ed.2d 638 (1990). Such indicia of trustworthiness must be apparent from the circumstances of the declaration, and not from reference to other evidence at trial. *Wright*, 497 U.S. at 822, 110 S.Ct. at 3150.

We now turn to the declarations in issue. Applying the above principles, we hold that the military judge did not abuse his discretion in admitting K's statements to Doctor Boos and Captain Rohback, and her videotaped interview by Agent Dick.

### B. Statement to Doctor Boos

■ The military judge admitted this declaration as a "statement for purposes of medical diagnosis or treatment" under Mil. R.Evid. 803(4). This is a "firmly rooted" exception to the rule against hearsay. *Wright*, 497 U.S. at 820, 110 S.Ct. at 3149; *United States v. Clark*, 35 M.J. 98, 105 (C.M.A.1992). Accordingly, in order to satisfy the Confrontation Clause, we need not examine K's statement to Doctor Boos for "particularized guarantees of trustworthiness" beyond the foundational elements of Mil.R.Evid. 803(4).

■ Mil.R.Evid. 803(4) provides that hearsay statements may be admitted if they are "made for purposes of medical diagnosis or treatment" and describe "medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." To support admission of a statement under this rule, the proponent's foundation must show (1) that the declarant had some expectations of promoting his or her well-being and, thus, an incentive to be truthful, and (2) the statement was made for the purpose of medical diagnosis and treatment. *United States v. Fling*, 40 M.J. 847, 852 (A.F.C.M.R.1994), citing *United States v. Armstrong*, 36 M.J. 311 (C.M.A.1993), and *United States v. Nelson*, 25 M.J. 110 (C.M.A. 1987), *cert. denied*, 484 U.S. 1061, 108 S.Ct. 1016, 98 L.Ed.2d 982 (1988). "The key factor in determining whether a particular statement is embraced by the medical-treatment exception is 'the state of mind or motive of the patient in giving the information to the physician and the expectation or perception of the patient that if he or she gives truthful information, it will help him or her to be healed.'" *United States v. Morgan*, 40 M.J. 405, 408 (C.M.A.1994), quoting *United States v. Clark*, 35 M.J. 98, 105 (C.M.A.1992), and *United States v. White*, 25 M.J. 50, 51 (C.M.A.1987).

■ K's statement to Doctor Boos meets these requirements. From Doctor Boos' testimony, it is clear there was a medical purpose to K's statements. Doctor Boos needed to know the nature of the sexual contact in order to decide the scope of his examination and treatment. For example, K related her father had engaged in sexual intercourse, but denied anal sodomy. Consequently, Doctor Boos conducted a vaginal examination, with tests for sexually transmitted disease, but did not perform a rectal examination. Doctor Boos' testimony also shows that K understood that Doctor Boos' would be making medical decisions based on what she told him, thereby providing her a clear incentive to be truthful. It was not required that K utter some formal affirmation that her statements were for medical purposes in order for them to be admissible under Mil.R.Evid. 803(4), as long as sufficient evidence supports an inference that she had that expectation. *United States v. Quigley, supra*. The evidence here is sufficient to support such an inference. This is not a case of an infant with limited capability to comprehend that telling the truth will be in her medical best interest. *Compare United States v. Faciane*, 40 M.J. 399 (C.M.A.1994); and *United States v. Williamson*, 23 M.J. 706 (A.F.C.M.R.1986), *rev'd on other grounds*, 26 M.J. 115 (C.M.A.

1988). The military judge's findings that this 13 year old "expected medical treatment and her statements were made in order to receive that treatment" are not clearly erroneous. Accordingly, we hold that the military judge did not abuse his discretion in admitting K's statement to Doctor Boos.

In reaching this conclusion, we are mindful that both K and Doctor Boos were aware that this examination had a legal purpose in addition to a medical one. In Doctor Boos' case, he fully appreciated the potential evidentiary value of K's statements to him and made his notes with a view toward making a clear record in the event they would be introduced at a trial. We do not believe this knowledge on the part of either K or Doctor Boos (or both) undermines the foundation for the admissibility of K's statements under Mil.R.Evid. 803(4). The evidence is still sufficient to infer that K, regardless of her awareness that the examination was part of the investigatory process, expected treatment from Doctor Boos, and understood it was in her medical best interest to be truthful with him. *See Morgan, supra,* at 409. For Doctor Boos' part, this is not a case where he was acting primarily as an investigator. *Compare United States v. Fink,* 32 M.J. 987, 992–993 (A.C.M.R.1991). Nor does Doctor Boos' commendable appreciation for the legal consequences of his actions run afoul of the Court of Military Appeals' admonition that it "will not condone efforts to extend Mil.R.Evid. 803(4) to include the testimony of a [practitioner] whose examination of an alleged victim was more oriented to his testifying at trial than to medical diagnosis or treatment." *United States v. Deland,* 22 M.J. 70, 75 (C.M.A.1986). K's statement to Doctor Boos was properly admitted into evidence under Mil.R.Evid. 803(4).

### C. Statements to Captain Rohback

■ We reach similar conclusions concerning the military judge's admission of K's descriptions of sexual abuse to this social worker as "statements for the purpose of medical diagnosis and treatment" under Mil. R.Evid. 803(4). The scope of this rule is not limited to statements to licensed physicians, but also may include statements to other medical practitioners and mental health therapists, including social workers. *United States v. Nelson,* 25 M.J. 110 (C.M.A.1987); *United States v. White,* 25 M.J. 50 (C.M.A. 1987); *United States v. Welch,* 25 M.J. 23 (C.M.A.1987); *United States v. Williamson, supra,* 26 M.J. at 118. The testimony of Captain Rohback establishes that his interviews with K were for a valid medical purpose, and not "more oriented to his testifying at trial than to medical diagnosis or treatment." *Deland, supra.* It also supports the inference that K understood Captain Rohback's purpose in talking to her was to promote her physical and emotional well-being, and that her truthful statements would assist him in that process. *See United States v. Quigley, supra.* The military judge's findings to this effect are not clearly erroneous. Accordingly, we hold that the military judge did not abuse his discretion in admitting K's statements to Captain Rohback under Mil. R.Evid. 803(4).

### D. Videotaped Interview with AFOSI

■ The military judge admitted this interview under Mil.R.Evid. 804(b)(5), the so-called "residual hearsay" exception. Residual hearsay rules are not "firmly rooted" exceptions to the rule against hearsay. *Idaho v. Wright, supra; United States v. Lyons,* 36 M.J. 183, 186 (C.M.A.1992); *United States v. Pacheco,* 36 M.J. 530, 534 (A.F.C.M.R.1992). Therefore, in addition to compliance with the foundational elements of Mil.R.Evid. 804(b)(5), we will examine K's statements during the interview for "particularized guarantees of trustworthiness" which will serve to satisfy the Confrontation Clause in the absence of cross-examination.

In admitting the videotaped interview, the military judge made findings which included the following:

6. [T]he purpose of videotaping child victims is to reduce the number of times the child has to tell his or her story and to preserve evidence for possible future trial. The videotape has very clear audio and visual quality and restates in the declarant's own words and demeanor (as opposed to Dr. Boos' written notes) the complete substance of her allegations against the accused. Although the videotape repeats

the allegations as stated to Dr. Boos, the videotape is the most probative evidence that the government can procure through reasonable efforts in light of the declarant's subsequent recantation.

7. The videotape interview has ample guarantees of trustworthiness. The declarant's statement was obtained without leading questions and is in her own words. It is the freely conceived product of the declarant as opposed to the result of suggestive interrogation. The statement is voluntary, is under oath, is detailed, is factual as opposed to conjectural, and is based on first-hand knowledge of the events. The declarant was relatively mature and aware of the need to be truthful, she lacked a motive to falsify at the time, she was a member of the accused's household and depended upon him for support, and she subjected herself to ridicule and social stigma among her friends and family by making the statement. The statement was made by the declarant shortly after the incident to which the statement relates with little opportunity to reflect, and is similar to other "firmly rooted hearsay exceptions," i.e., it is a restatement of allegations made earlier that same day to Dr. Boos in a very reliable setting that qualifies under MRE 803(4), and is also a restatement of allegations made the day before to [JH] in a reliable setting that nearly qualifies [as an excited utterance] under MRE 803(2).[9]

\* \* \* \* \* \*

9. The declarant recanted her allegations against the accused prior to trial.

\* \* \* \* \* \*

### DECISION

\* \* \* \* \* \*

3. Prosecution Exhibit 1, the videotape of 18 Mar 92, is admissible under MRE 804(b)5, since the declarant is unavailable, the exhibit is offered as evidence of a

material fact, it is more probative of the point for which it is offered than any other evidence that the government can procure, it has circumstantial guarantees of trustworthiness, the accused's 6th Amendment right to confront his accuser is available to the accused,[10] and the interests of justice will be best served by admission of this exhibit. Moreover, the government's legitimate need for this evidence is not outweighed by any unfair prejudice to the accused.

These findings clearly satisfy the foundational elements of Mil.R.Evid. 804(b)(5). They are supported by evidence of record, and are not clearly erroneous. During oral argument, the appellant's counsel contended that the videotape was not more probative than other evidence available to the prosecution (specifically, K's statements to Doctor Boos and Captain Rohback) and, therefore, the tape was not admissible under Mil. R.Evid. 804(b)(5). We reject this argument as patently without merit. Having determined that Mil.R.Evid. 804(b)(5) has been satisfied, the task remaining before us is to determine whether the videotaped interview possesses "particularized guarantees of trustworthiness" which meet the requirements of the Confrontation Clause in absence of the adversarial test of cross-examination.

Paragraph 7 of the military judge's findings includes several factors favoring the reliability of K's videotaped interview. All of these findings are based on evidence of record, and are not clearly erroneous. To the military judge's findings, we would add our 'own observation of K's sincere demeanor during the interview. Most of these factors have been recognized by the courts as supporting admission of hearsay statements from children consistent with the Confrontation Clause. *Idaho v. Wright, supra,* 497 U.S. at 821, 110 S.Ct. at 3149–50, and cases cited therein; *United States v. Pollard,* 38

---

9. The military judge granted the defense's motion *in limine* to exclude K's statements to JH on the afternoon of 17 March 1992. Notwithstanding this ruling, it was permissible for the military judge to consider JH's testimony in deciding whether to admit the videotaped interview. Mil. R.Evid. 104(a).

10. To the extent this clause refers to the military judge's conclusion that, under German law, the accused could have compelled K's attendance as a witness, we will disregard it. See note 8, *supra.*

M.J. 41, 50 (C.M.A.1993); [11] *United States v. Lyons, supra,* 36 M.J. at 186–187; *United States v. Clark,* 35 M.J. 98, 106 (C.M.A.1992). In our review of K's interview, we also note the absence of factors which courts have viewed as undermining the reliability of children's pre-trial statements. Specifically, there was no indication that K, prior to the videotaped interview, had been under the influence of someone hostile to the accused or would refuse to testify against him, no *ex parte* presence of prosecuting attorneys, and no appearance that Agent Dick's sole purpose in taping K was to "build a criminal case" against the accused. *United States v. Harjak,* 33 M.J. 577, 582 (N.M.C.M.R.1991); *United States v. Palacios,* 32 M.J. 1047, 1052–1053 (A.C.M.R.1991), *rev'd on other grounds,* 37 M.J. 366 (C.M.A.1993).

 The only factors which run contrary to the military judge's determination are K's subsequent recantation, the "motive" for her "lies" as explained by K in her recantation, and the fact that the interview was conducted by a law enforcement official. The circumstances of K's recantation are highly suspect. Her asserted motive to fabricate makes little sense and appears contrived. We agree with the military judge that K's recantation does not prevent the conclusion that the videotaped interview possesses sufficient indicia of reliability to satisfy the Confrontation Clause.

Regarding Agent Dick's role as K's interviewer, we share Judge Cox's concern whether statements obtained by law enforcement officials possess "such a degree of bipartisanship that an accused cannot reasonably contend that the purposes of cross-examination have not been served." *United States v. Hines,* 23 M.J. 125, 137 (C.M.A.1986). However, like Judge Cox, we are prepared to presume that investigators like Agent Dick conduct their activities in a professional manner, unless the contrary appears. *Id. See also United States v. Palacios, supra,* 32 M.J. at 1052–1053 n. 10. In this case, however, the military judge did not have to presume any such thing, because the manner in which Agent Dick conducted K's interview was visually and audibly duplicated on the videotape. As stated by the military judge in his findings, K's statements were "obtained without leading questions and [are] in her own words." They were "the freely conceived product of the declarant as opposed to the result of suggestive interrogation." We also note that the presence of K's best friend (JH) and JH's mother during the interview was an added factor which militated against any "station house" intimidation. Unless we are prepared to hold (which we are not) that statements obtained by law enforcement officials *never* pass constitutional muster as residual hearsay, then we may not rely on this fact alone to hold the military judge erred in admitting this interview.

We believe K's 18 March 1992 videotaped interview with Agent Dick possesses sufficient "particularized guarantees of trustworthiness" such that cross-examination would have had marginal utility for the accused. During oral argument, we directly asked appellant's counsel what points could have been made by trial defense counsel if K had been present for cross-examination. Appellant's counsel suggested he might have asked K if penetration had occurred and whether any force was involved. Yet, these questions would have been completely contrary to the accused's theory at trial, which was that K was lying about everything. The accused was permitted to introduce into evidence K's written statement recanting her accusations. If K had been present as a witness, the defense certainly could not have obtained from her any greater concession than that. It is disingenuous to argue that, but for the lack of an opportunity to cross-examine, the defense would have been able glean favorable details about events which the witness would deny occurred. We hold that the military judge did not abuse his discretion in admitting K's videotaped 18 March 1992 interview with Agent Dick under Mil.R.Evid. 804(b)(5).

11. In *Pollard,* the six-year-old girl was present as a witness and subject to cross-examination. Therefore, the basis for admitting her prior statements was Mil.R.Evid. 803(24). However, during testimony she was "withdrawn and generally uncommunicative." 38 M.J. at 50. It appears that the court could have properly applied Mil. R.Evid. 804(a)(2) or (4) to have considered the girl "unavailable."

**580**

### E. Hearsay and Factual Sufficiency

Although holding the military judge did not abuse his discretion in admitting any of K's hearsay statements, we are mindful of our Article 66(c) obligation to affirm findings of guilty only if we are persuaded of the appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987). Convictions based solely on hearsay are troubling, even if the military judge committed no errors in admitting the hearsay. However, based on the totality of the evidence, we are convinced beyond a reasonable doubt that the appellant is guilty of rape and committing indecent acts upon the body of his daughter.

### III. CARNAL KNOWLEDGE "SPECIFICATION"

■ The military judge committed plain error when he ruled on the accused's motion for a finding of not guilty of rape in such a way as to fashion a brand new specification alleging carnal knowledge. This requires us to set aside the accused's conviction of that specification and reassess his sentence.

■ Although the military judge did not expressly acquit the accused of rape for any of the divers incidents alleged from 26 September 1989 up to but excluding the one on 16 March 1992, his decision to "rule for the defense" was, in effect, a finding of "not guilty" of rape as to that portion of the specification. R.C.M. 917(e). Such findings are final when announced and may not be reconsidered, *United States v. Hitchcock*, 6 M.J. 188 (C.M.A.1979); R.C.M. 917(f).

The military judge believed—as did all counsel, apparently—that carnal knowledge was a lesser-included offense of rape. In an attempt to exercise his authority under R.C.M. 917(e) to grant a motion for a finding of not guilty for a greater offense, while not doing so for a lesser-included offense, the military judge then crafted a carnal knowledge specification and had it listed on the charge sheet as "specification 2" of Charge II. This was accomplished with the active assistance of the defense counsel. Even if the military judge had been correct about

carnal knowledge being a lesser-included offense of rape, we question whether this was the correct procedure. *See* R.C.M. 917(e), which sets out the procedure to use in such cases.

■ In any case, we hold that carnal knowledge is not a lesser-included offense of rape, at least where (as here) the rape specification does not allege the victim's age as being under 16, thereby putting the accused on notice to defend against it as well as the principal offense of rape. *Schmuck v. United States*, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989); *United States v. Smith*, 7 M.J. 842 (A.C.M.R.1979); Article 79, UCMJ;[12] MCM app. 21 ¶45d. *See also United States v. Emmons*, 31 M.J. 108, 111 (C.M.A.1990); MCM Part IV ¶2b. Therefore, the military judge should have simply granted the motion for a finding of not guilty as to the affected portion of the specification of Charge II, without breaking out a new "specification 2."

■ We consider this to have been plain error not waived by the defense. This is not a case where an instruction on a legitimate lesser-included offense is affirmatively waived by the defense. *Compare United States v. Strachan*, 35 M.J. 362 (C.M.A.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1595, 123 L.Ed.2d 159 (1993); and *United States v. Spears*, 39 M.J. 823 (A.F.C.M.R.1994). We also reject the government's reliance on R.C.M. 603(d). That rule states that "major" changes to charges and specifications may not be made "over objection of the accused unless the charge or specification affected is preferred anew." The government concedes this new specification was a "major" change to the charge without benefit of preferral, but argues the accused's failure to object permitted it. We are not prepared to extend R.C.M. 603(d) to this situation, where the defense acquiesced in the mid-trial creation of a new allegation based on an erroneous assumption that it reflected a lesser-included offense of the properly charged offense.

Accordingly, we will set aside the finding of guilty of specification 2 of Charge II, and

**12.** 10 U.S.C. § 879 (1988).

dismiss that specification. Because the acts reflected in that specification (sexual intercourse with his adolescent daughter over a two and one-half year period) formed a significant portion of the offenses for which the accused was sentenced, we cannot conclude that the accused suffered no harm from this error. Therefore, we must now consider whether to reassess the sentence or return the case for a rehearing on sentence.

 In reassessing the appellant's sentence, we must try to determine what the sentence would have been absent the error. *United States v. Sales,* 22 M.J. 305, 307 (C.M.A.1986). If we can determine what sentence probably would have been adjudged, we may do so; otherwise, we must return the case for a rehearing. *United States v. Jones,* 39 M.J. 315, 317 (C.M.A. 1994); *United States v. Peoples,* 29 M.J. 426 (C.M.A.1990). If we are able to determine the sentence which probably would have been adjudged, we then must decide whether that sentence is nonetheless appropriate. *Peoples,* 29 M.J. at 428; *Sales,* 22 M.J. at 308.

After weighing the improper carnal knowledge conviction against the remaining convictions of rape and indecent acts with a child, we believe we can reassess the sentence. The impact of the carnal knowledge conviction was significant because of the number of incidents involved. However, the rape of K was the most serious offense for which the accused was convicted, and we are confident his conviction for this crime, along with his conviction for multiple incidents of indecent acts, had the greater effect on the sentencing process. Accordingly, we reassess the sentence and reduce the confinement portion to seven years. We have given individualized consideration to the seriousness of the convictions, the character and military performance of the appellant, and all circumstances documented in the record of trial. *United States v. Snelling,* 14 M.J. 267 (C.M.A.1982). We find the sentence, as reassessed, to be appropriate.

We resolve the remaining assignments of error against the appellant. We hereby set aside the finding of guilty of specification 2 of Charge II. The remaining findings of guilty, and that portion of the approved sentence which extends to a bad conduct discharge, confinement for seven years, and reduction to E–1, are correct in law and fact, and on the basis of the entire record are

AFFIRMED.

Judge YOUNG concurs.

DIXON, Chief Judge (dissenting):

Appellant was convicted of child sexual abuse solely on the basis of out of court statements of sexual abuse made by his 13 year old daughter. The central issue is whether the admission of the hearsay statements unfairly infringed upon appellant's right under the Sixth Amendment of the United States Constitution to confront his accuser. Appellant argues that hearsay evidence was erroneously admitted into evidence and his conviction should be set aside. I agree.

Over defense objections, the military judge allowed statements made by appellant's daughter to the OSI and to Dr. Boos, a pediatrician, to be presented as evidence. Despite the fact the daughter recanted her statements, did not appear at the Article 32 investigation, and was not present at trial, the military judge ruled her out of court statements did not unfairly infringe upon appellant's Sixth Amendment right to confront and cross-examine his accuser. On appeal, appellant claims the military judge misapplied the law in finding the evidence was admissible as exceptions to the hearsay rule. Government counsel argues the military judge's ruling on the admission of the hearsay evidence is entitled to "considerable discretion" and should be upheld by this Court absent an abuse of discretion. *United States v. Pollard,* 38 M.J. 41, 49 (C.M.A.1993); *United States v. Orsburn,* 31 M.J. 182 (C.M.A.1990); *United States v. Bridges,* 24 M.J. 915 (A.F.C.M.R.1987).

In my view, there was a clear abuse of discretion by the military judge since the circumstances which the law would deem as justification for admitting the doctor's testimony and the videotaped statement were missing. I believe it was error to admit the daughter's statement to Dr. Boos under Mil.

R.Evid. 803(4) as a "statement for the purpose of medical diagnosis or treatment." Likewise, I believe it was error to admit her videotaped statement to the OSI under Mil. R.Evid. 804(b)(5) because the surrounding circumstances were insufficient to show "particularized guarantees of trustworthiness." *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).

## I. Does the Medical Exception Apply?

Were the statements made to Dr. Boos by appellant's daughter furnished under circumstances which warrant a presumption of their trustworthiness? I think not. An out of court statement is not admissible as a hearsay exception merely because it is made to a doctor. Nor is it admissible solely because the doctor uses the information for purposes of diagnosis or treatment. To be admissible as a hearsay exception the statement must be made for the purposes of medical diagnosis or treatment and must be made by a patient who has *some expectation of receiving medical benefit from the medical diagnosis or treatment that is being sought. United States v. Williamson,* 26 M.J. 115, 118 (C.M.A.1988); *United States v. Deland,* 22 M.J. 70, 75 (C.M.A.1986).

In his findings of fact, the military judge concluded:

> At approximately 1000–1030 hours, the declarant was interviewed by Major (Doctor) Stephen C. Boos, a pediatrician assigned to Wiesbaden Hospital. Mrs. Holman remained present during the examination at the declarant's request. The interview was conducted at the Wiesbaden Hospital in Dr. Boos' pediatric clinic. He informed the declarant that he was a doctor and that he was there to provide medical treatment for her. His questioning of the declarant was designed to elicit facts upon which he could base diagnosis and treatment. He physically examined the declarant and subjected her to clinical testing.

> The declarant was 13 years old at the time, was of at least average intelligence, and fully understood that Dr. Boos' interview and physical examination of her was being done for purposes of medical diagnosis and treatment. She expected medical treatment and her statements were made in order to receive that treatment.

\* \* \* \* \* \*

The declarant's statements to Dr. Boos on 18 Mar 92 are admissible under MRE 803(4), since the statements were made for purposes of medical diagnosis and treatment, and with the expectation of receiving medical treatment.

The military judge's findings read like a classic case for the admission of hearsay evidence. Both prongs needed for admission, namely (1) made for purposes of medical diagnosis and treatment and (2) expectation of receiving medical treatment, are specifically found. However, it is impossible for me to accept the judge's findings based on a factual analysis of the record. His finding that the declarant "expected medical treatment and her statements were made in order to receive that treatment" require a "leap of faith" that I'm unwilling to make. I choose *not* to adopt the military judge's findings when the circumstances surrounding the taking of the daughter to the hospital do not suggest she desired, asked for, or even appreciated the need for medical treatment. *United States v. Armstrong,* 36 M.J. 311, 313 (C.M.A.1993).

A key question is why was appellant's daughter taken to the hospital? Did either of her parents take her for some type of treatment? No. Did Mrs. Holman, the person who initially heard about the sexual abuse and the person who took her the next morning to the OSI, suggest she needed medical attention? No. Did the OSI immediately refer her for medical attention? No, they first interviewed her for 30 minutes. Did anyone ask declarant if she would like to be seen by a doctor? Again, no.

The circumstances which brought appellant's daughter to the Wiesbaden Hospital were described in the following direct testimony of Special Agent Dick during the Article 39(a) session:

Q. And how long did that first interview take?

A. Approximately 30 minutes.

Q. And that interview took place at the Law Enforcement Desk? Law Enforcement Office?

A. Yes, sir. They had an empty room that we used.

Q. Okay. What did you do then?

A. At that point I called the clinic and had the Patient Affairs personnel grab Miss Ureta's records. We took Miss Ureta to the Wiesbaden hospital for medical examination.

Q. Did she ask you to be taken to the hospital?

A. No, sir.

Q. Indeed, you told her that we are going to do this, we are going to take you to the hospital for an examination?

A. No, sir. No, sir, I did not. I asked her if she would consent to an examination because medical evidence had to be gathered in these types of allegations.

Q. Did she sign a consent form?

A. I did not ask her for a consent form, that was the doctor's job. The doctor had to prove to himself that she was consenting to his medical examination.

The record shows appellant's daughter was told she was being taken to the hospital not for treatment or diagnosis, but rather for an examination for the purpose of obtaining medical evidence. The following direct testimony of Dr. Boos fails to disclose that she was at the hospital for anything other than an examination:

Q. All right, sir. As far as the examination of Katherine Ureta, when she came to your office who else, if anyone, was present?

A. Within my office, Mrs. Debra Holman was present.

Q. As far as prior to her coming into your office, was anyone else around?

A. Well, we had been notified that there was a suspected child sexual abuse being brought to the Emergency Room, and so we notified them that, you know, we would be able to see the case, that I would be able to clear my schedule and see the person. And then when nothing happened I went over there and eventually Katherine and Mrs. Holman and two OSI agents arrived, and I discussed the case with the OSI agents in a back room while Katherine and Mrs. Holman were out in the waiting room.

Q. After this briefing on the case, what happened next?

A. Well, they had brought them to the Emergency Room and the Emergency Room notified us. The OSI was uncertain as to how the evaluation would be performed, whether it would be done in the Emergency Room by an emergency room physician or by a gynecologist, or by a pediatrician. And I informed them that I did most of these exams and that I preferred to do it because I had had some training and experience in the interview as well as I felt I could be, you know, more sympathetic and empathetic and supportive of the patient than a gynecologist. And I notified them that I was familiar with rape protocol and there are specimen collection needs, and then it was determined that I should do the exam. And then we left the back room and came out and had the patient and Mrs. Holman follow us to the waiting room. I went in, got my office ready, told my staff what supplies I would need, and then we called Mrs. Holman and Katherine in and began the interview.

Q. Okay. And when they came in, what did you say to them?

A. Well, first I asked whether Katherine wanted to have Mrs. Holman there or whether I could talk to her alone, if she needed to have Mrs. Holman there. She indicated that she preferred to have Mrs. Holman there, so I had them both sit. Then I told them who I was, Dr. Boos, that I was a pediatrician, let them know that I had heard a little bit of Katherine's story and that I wanted to talk to her and to examine her to see whether any harm had come to her, whether she had caught any infections, but that before I started, to do the best job I needed to hear her story from herself.

I submit the government failed to show appellant's daughter was seeking medical treatment. When the medical exception to

the hearsay rule is invoked, it is incumbent upon the moving party to show not only that the medical person was treating or diagnosing the patient, but also that the patient furnishing the information was seeking such help. *Williamson* at 118. In my view, this scenario makes the medical hearsay exception a sham. The doctor here was merely asking declarant to repeat the *story* she had already told Mrs. Holman and the OSI. The notion that she would be truthful because she was seeking medical help simply does not apply in this situation.

The medical exception to the hearsay rule presupposes something more than a mere physical examination. It requires the patient to believe something is medically wrong or that there is a medical condition that requires treatment. My common sense analysis of the circumstances tells me that appellant's daughter was not seeking or expecting a medical benefit when she was asked to tell her story to Dr. Boos. Consequently, I find no reasonable basis to conclude that it is likely that declarant was more truthful in relaying her story to Dr. Boos than she was in telling it to Mrs. Holman or the OSI. Everything she was told by the OSI and Dr. Boos indicates that because of her story (whether truthful or not), she would receive a medical examination. The premise underlying the exception is that one "undergoing diagnosis or receiving treatment from a trained medical professional has an incentive to be truthful because such answers will promote" the patient's wellbeing. *United States v. Welch*, 25 M.J. 23, 25 (C.M.A.1987). In situations like this, where it is not clearly shown that declarant was aware that she was being medically treated, the entire premise of the reliability of the offered statement dissipates. *United States v. Edens*, 31 M.J. 267, 269 (C.M.A.1990). I find appellant was denied his right of confrontation and materially prejudiced by the erroneous admission of his daughter's hearsay statements to Dr. Boos.

## II. Was Videotape Admissible as Residual Hearsay?

I also find the military judge's admission into evidence of the videotaped statement of appellant's daughter over defense objection to be error. Following her examination by Dr. Boos, appellant's daughter was taken back to the OSI office to be reinterviewed on videotape. She responded to questions posed by Special Agent Dick during a 35 minute session. In essence, she recounted the same story she had previously provided to Mrs. Holman, the OSI and Dr. Boos. In ruling the evidence admissible, the military judge stated:

Prosecution Exhibit 1, the videotape of 18 Mar 92, is admissible under MRE 804(b)(5), since the declarant is unavailable, the exhibit is offered as evidence of a material fact, it is more probative of the point for which it is offered than any other evidence that the government can procure, it has circumstantial guarantees of trustworthiness, the accused's 6th Amendment right to confront his accuser is available to the accused, and the interests of justice will be best served by admission of this exhibit. Moreover, the government's legitimate need for this evidence is not outweighed by any unfair prejudice to the accused.

I find error in the admission of the videotaped statement because it does not satisfy the "indicia of reliability" requirement established by *Idaho v. Wright, supra.* As in *Wright*, the question is not whether the declarant was unavailable, but rather whether the statement bore sufficient indicia of reliability to withstand scrutiny under the Confrontation Clause. In order to be admitted under the residual hearsay exception, an out of court statement must be supported by a "showing of particularized guarantees of trustworthiness." *Wright*, 497 U.S. at 817, 110 S.Ct. at 3147. In other words, the surrounding circumstances must so clearly point to declarant's truthfulness that cross examination would be of marginal utility in the search for truth. *Idaho v. Wright, supra* at 820, 110 S.Ct. at 3149.

In support of his decision to admit the videotaped statement, the military judge made the following findings:

Although the videotape repeats the allegations as stated to Dr. Boos, the videotape is the most probative evidence that the government can procure through reason-

able efforts in light of the declarant's subsequent recantation.

The videotape interview has ample guarantees of trustworthiness. The declarant's statement was obtained without leading questions and is in her own words. It is the freely conceived product of the declarant as opposed to the result of suggestive interrogation. The statement is voluntary, is under oath, is detailed, is factual as opposed to conjectural, and is based on first-hand knowledge of the events. The declarant was relatively mature and aware of the need to be truthful, she lacked a motive to falsify at the time, she was a member of the accused's household and depended upon him for support, and she subjected herself to ridicule and social stigma among her friends and family by making the statement. The statement was made by the declarant shortly after the incident to which the statement relates with little opportunity to reflect, and is similar to other "firmly rooted hearsay exceptions," i.e., it is a restatement of allegations made earlier that same day to Dr. Boos in a very reliable setting that qualifies under MRE 803(4), and is also a restatement of allegations made the day before to Jennifer Holman in a reliable setting that nearly qualifies under MRE 803(2).

\* \* \* \* \* \*

The accused's 6th Amendment right to confront and cross examine his accuser is not unfairly infringed upon by allowing previous statements of the declarant into evidence, since the defense can subpoena the declarant to explain why she recanted her earlier statements. German law does not permit the declarant to refuse to testify *for* her father. Moreover, the defense has been given the opportunity to introduce the declarant's written recantation in the event that it does not elect to call the declarant in person.

While the military judge's findings describe the circumstances of the making of the videotaped statement in considerable detail, I am not persuaded that they establish the "particularized guarantees" of declarant's trustworthiness necessary for admission of the statement under the residual hearsay exception. It must be noted that the residual hearsay exception is not a "firmly rooted" exception to the hearsay rule. *United States v. Hines*, 23 M.J. 125, 134 (C.M.A.1986). The residual exception to the hearsay rule is to be rarely used and is intended to apply only to "highly reliable" evidence. *United States v. Giambra*, 33 M.J. 331, 334 (C.M.A.1991), *rev'd on other grounds*, 38 M.J. 240 (C.M.A. 1993); *United States v. Dunlap*, 39 M.J. 835, 838 (A.C.M.R.1994). "Particularized guarantees" of trustworthiness means that statements admitted under the residual hearsay exception must have equivalent guarantees of trustworthiness as evidence admitted under a firmly rooted hearsay exception. Mil.R.Evid. 804(b)(5); *Idaho v. Wright, supra*, 497 U.S. at 821, 110 S.Ct. at 3149–50. In other words, it must be so trustworthy that adversarial testing would add little to its reliability. In each case, the circumstances which will qualify as "equivalent guarantees" of trustworthiness are for the trial court to determine and appellate courts to review. *See United States v. Stivers*, 33 M.J. 715, 720 (A.C.M.R. 1991).

The admission of a hearsay statement is much less likely to offend the Sixth Amendment right to confrontation when the declarant is available to testify under cross-examination. *United States v. Harjak*, 33 M.J. 577 *fn. 4* (N.M.C.M.R.1991). When, however, as in this case, the declarant is not available at trial, the accused has not had the opportunity to cross-examine the declarant at any stage of the justice process, counsel for the accused had not even had an opportunity to interview the declarant, and the declarant has recanted the earlier statement, I submit appellate courts have a greater responsibility to scrutinize the particularized guarantees of trustworthiness to eliminate the possibility of fabrication, coaching, or confabulation. *Idaho v. Wright, supra*, 497 U.S. at 820, 110 S.Ct. at 3149.

Examining the military judge's finding, I am not satisfied the circumstances indicated therein provide the same high degree of reliability we assume when a deeply rooted exception to the hearsay rule is recognized. Nor am I satisfied cross examination would have added little to the search for the trust-

worthiness of declarant's statement. In *Idaho v. Wright,* the court suggested four factors which might properly relate to the reliability of a hearsay statement by a child witness. The four factors were (1) spontaneity and consistent repetition (2) mental state of the declarant (3) use of terminology unexpected of a child of similar age, and (4) lack of motive to fabricate. *Idaho v. Wright, supra,* at 821, 110 S.Ct. at 3149–50. In my view, none of these factors were present in this case.

A videotaped statement made after repeated questioning by Mrs. Holman, Dr. Boos, and the OSI could scarcely be called spontaneous. As was noted in *Idaho v. Wright,* when there is evidence of prior interrogation, prompting, or manipulation by adults, spontaneity may be an inaccurate indicator of trustworthiness. Declarant's trustworthiness could not be judged from the mental state that declarant displayed. The only change in her emotional state occurred when she was relaying how her mother had physically abused her. In her videotaped statement, declarant used no unexpected terminology. If anything, her description of events was somewhat lacking in detail. Finally, I find the military judge's conclusion that declarant "lacked a motive to fabricate at the time" lacks any factual support. In view of declarant's age (in pubescence), unwillingness to confide in her mother, knowledge of her mother's unfaithfulness to her father, frustration over her father's failure to intercede to prevent the mother's physical abuse of the children, and desire not to return to her home because of her mother's physical abuse, any conclusion that she lacked a motive to fabricate at the time must be viewed with some suspicion. None of the factors listed in the findings convince me that cross-examination of declarant would have contributed little to the establishment of her reliability.

Particularly disturbing in the findings by the trial judge were his reliance upon other hearsay exceptions, his suggestion that the defense could have subpoenaed the declarant, and his ruling that the defense would be allowed to introduce declarant's written recantation. First, if admission of declarant's

statements to Dr. Boos was error, as I believe it was, then the fact that the videotaped statement was similar to it scarcely justifies its admission under the residual hearsay exception. Nor does the fact that it was similar to statements made to Jennifer Holman which were not admissible as "excited utterances." Admissibility of evidence under the residual hearsay exception means it has equivalent guarantees of reliability to other hearsay exceptions, *not that it is similar to other evidence that didn't have sufficient indicia of reliability to warrant admissibility under a "firmly rooted" hearsay exception.*

I am at a loss as to how the defense had a greater opportunity to *subpoena* declarant to appear in a court-martial in Germany than did the government. The findings of the military judge are tantamount to a finding that appellant waived his right of cross-examination. I do not believe that finding is supported by the record. The suggestion that granting appellant permission to admit declarant's written recantation somehow balances the constitutional concerns related to the admission of her videotaped accusation is difficult for me to comprehend.

I am simply not convinced the videotaped interview by the law enforcement officer in this instance possessed sufficient guarantees of trustworthiness to make the statement so reliable as to preclude the necessity for cross-examination. *See United States v. Barror,* 23 M.J. 370, 372 (C.M.A.1987); *United States v. Palacios,* 32 M.J. 1047 (A.C.M.R. 1991), *rev'd on other grounds,* 37 M.J. 366 (C.M.A.1993).

Pursuant to my obligation under Article 66(c), I cannot vote to affirm this conviction. To do so, I would be saying that appellant's constitutional right to confront his accuser was superfluous in this case and would not have assisted in any meaningful way in the search for truth. I would be saying that I am satisfied having appellant's conviction rest solely upon hearsay evidence. For the reasons indicated above, I do not find the hearsay evidence presented at trial to have sufficient reliability to be admitted, and certainly not trustworthy enough alone to convince me beyond a reasonable doubt of appellant's guilt.

There are many cogent reasons why the law has an inherent distrust of hearsay evidence. Mil.R.Evid. 802. Even when admitted under one of the authorized exceptions, we should ask ourselves if the hearsay evidence is sufficiently convincing to be reliable and trustworthy on the issue of guilt. We must look to the facts and circumstances to answer that question. When the hearsay evidence is corroborated by other evidence of guilt, when an accused has entered a plea of guilty or when an opportunity to cross examine the declarant was waived, the inherent distrust of hearsay evidence is attenuated. However, when an accused enters a plea of not guilty, when his accuser recants her story, when the accused has not been given an opportunity to cross examine the declarant, and when there is no evidence of guilt other than the hearsay testimony, we have a situation which cries out for close scrutiny of the reliability of the hearsay evidence. Is the hearsay evidence more convincing because it was heard by more than one person or was repeated on more than one occasion. In my opinion, it is not. The mere fact that something has been repeated does not make it more believable. In our system of justice, a statement becomes most believable when it is made in open court and is subjected to vigorous cross examination. That time honored and constitutionally protected test did not occur in appellant's trial. It is the responsibility of this Court to determine for ourselves whether the reliability of evidence is sufficient to convince us beyond a reasonable doubt of appellant's guilt. Based upon my review of the entire record, I am not convinced his conviction is correct in law and in fact. Article 66(c) UCMJ.