MORGAN, Judge:
Convicted pursuant to his conditional plea of guilty of one specification of marijuana use in violation of Article 112a of the Uniform Code of Military Justice (UCMJ)[1] appellant complains that the military judge erred in refusing to suppress the results of a positive urinalysis. Disagreeing, we affirm.
A career reservist, appellant was serving a voluntary tour of active duty as a recruiter for the 315th Airlift Wing at Charleston Air Force Base (AFB), South Carolina. On December 7,1993, his supervisor, Senior Master Sergeant (SMSgt) Turner, received a letter through the mail, signed by Captain (Capt) Johnson, appellant’s “administrative commander” at Warner-Robins AFB, Georgia, notifying him that appellant had been selected for random urinalysis testing. The letter to SMSgt Turner, dated December 1, 1993, stated “the intent of the [random urinalysis testing] program is random, short notice testing. Ideally, the intent of the program is to allow the individual to be tested within two hours or less of notification.” However, the undated letter attached to Turner’s letter, addressed to appellant, officially notifying him of the requirement to test, conveyed no such urgency. On the contrary, it permitted him 24 hours from the time of notification in which to provide a sample. Turner receipted for the package at 1130, December 7, 1993, and appellant receipted for his at 1300, December 7, 1993. (Appellant’s letter will be referred to hereinafter as the December 7 letter, on the basis of its receipt.)
SMSgt Turner drove appellant directly to the clinic on base to provide the sample immediately after serving the notification on appellant. However, while they were still in the parking lot of the clinic, seated in Turner’s car, appellant said he could not provide a sample, because he had “done something stupid” the preceding weekend.
Not one to force the issue, and since the letter had generously afforded appellant a full 24 hours in which to ponder whether to obey the order of Capt Johnson, Turner drove appellant to meet with Colonel Bankers, commander of the 315th Airlift Wing. *752 The three discussed the problem for between a half hour to .three hours, depending upon whose version you believe. At no time was appellant advised of his rights under Article 31, UCMJ.[2] On several occasions during this discussion, appellant renewed his declination to provide a urine sample, noting that he didn’t think there had been enough time for his system to “clean itself out.” At the conclusion of this discussion, appellant was permitted to go home.
The following morning, faced with appellant’s continued obduracy, SMSgt Turner telephoned Capt Johnson to advise him of the problem. Capt Johnson, after conferring with the Staff Judge Advocate (SJA) of Headquarters, Air Force Reserve (AFRES), telefaxed a second letter to appellant, unfortunately styled “Commander Directed Urinalysis Test.” This letter renewed the order of the preceding day, advising appellant that “failure to comply with this lawful order by 1300, 8 Dec 93, will result in punitive action taken against you under the Uniform Code of Military Justice.” Appellant was served with a copy of this letter at approximately 0930 that morning, and finally provided a urine sample at 1238, twenty-two minutes before the expiration of the original deadline of the December 7 letter. Unsurprisingly, appellant’s urine sample returned testing positive for the presence of the metabolite of marijuana, tetrahydrocannabinol (THC).
At trial, appellant moved to suppress the results of the urinalysis test, arguing, as he does here, that the second letter from Capt Johnson changed the character of the test from a random urinalysis inspection, conforming with the requirements of Mil.R.Evid. 313(b), into a command-directed urinalysis. Air Force Regulation (AFR) 30-2, Social Actions Program, para. 5-8 (18 Apr 86) (C1, 19 August 1988), the regulation then-governing, with a few exceptions not pertinent here, prohibited use of the results of a command-directed examination in any disciplinary action under the UCMJ. Pointing to his spontaneous declaration to SMSgt Turner in the parking lot outside the clinic, appellant contends that since the chain of command was on notice of his probable drug abuse, the “randomness” of the original urinalysis inspection was vitiated. At that point, appellant concludes, the government could either “direct” him to provide the sample, and lose thereby the opportunity to prosecute, or proceed on the basis of probable cause.
Appellant concedes that the original order was a valid inspection under Mil.R.Evid. 313(b), but argues that the intervening fact of his refusal to provide a sample with the accompanying explanation that he had “done something stupid” invalidated it. The adage that “two wrongs do not make a right” has peculiar application to one who, having used illicit drugs, then seeks to foreclose the discovery of that fact by the disobedience of an order.[3] In United States v. Moeller, 30 M.J. 676 (A.F.C.M.R.), pet. denied, 32 M.J. 14 (C.M.A.1990), we held that a commander’s order to resubmit a urine sample, following the loss of the original, did not change the legitimacy of the original inspection. Appellant seeks to distinguish this case by noting that, unlike the situation in Moeller, the government had reason to suspect him at the time the second order was issued. We do not find this distinction persuasive. In United States v. Nand, 17 M.J. 936 (A.F.C.M.R.1984), the accused had turned in tap water instead of his urine sample during a routine medical examination. This suspicious behavior prompted the order to provide a second, legitímate sample, and the submission of a portion of that sample for drug urinalysis. We held there that the original valid, medical purpose for the urinalysis was not transformed by the intervening circumstance of the accused’s behavior or by the subsequent decision to use part of the specimen for drug screening.
But, appellant contends, the labeling of the December 8, 1993, letter from Capt Johnson *753 as “Commander Directed” binds the government to the non-punitive use of such a sample required by AFR 30-2. Capt Johnson testified at trial that he discussed the situation with the SJA of AFRES, generated the letter, and that the SJA further reviewed that letter before its dispatch. Pointing to this legal review, appellant argues that the government must have intended to change the nature of the required urine sample to command-directed. This contention, however, is amply refuted by the testimony of Capt Johnson at trial. There he declared that he had no such intention, that he meant to do no more than to reinforce in appellant’s mind the requirement to donate a urine specimen under the original order, and to underscore the consequences of a failure to do so.
In denying appellant’s motion on this issue, the military judge correctly held the government to a “clear and convincing” standard of proof in demonstrating that the urinalysis was a valid inspection, and not command-directed. Mil.R.Evid. 313(b). In his findings of fact, the military judge noted the “inartfully titled” subject block of the December 8 letter, but concluded that Capt Johnson’s “purpose and intent was to have the accused complete the random test/inspection that he had originally ordered.” We will not disturb these findings unless they are clearly erroneous or unsupported by the evidence of record. United States v. Collins, 41 M.J. 428, 429, cert, denied, — U.S. -, 116 S.Ct. 76, 133 L.Ed.2d 35 (1995); United States v. Burris, 21 M.J. 140, 144 (C.M.A. 1985). This finding of fact is not clearly erroneous, finding ample support in Capt Johnson’s testimony and in the body of the December 8 letter. An administrative error, or even a mistaken mislabeling of an otherwise valid inspection, will not serve to invalidate that inspection, or to change its character. United States v. Pompey, 32 M.J. 547 (A.F.C.M.R.1990), ajfd, 33 M.J. 266 (C.M.A. 1991). Consequently, the military judge did not abuse his discretion in admitting the results of appellant’s urinalysis. United States v. Ureta, 41 M.J. 571 (A.F.Ct.Crim. App.1994); United States v. Evans, 37 M.J.
867, 868 (A.F.C.M.R.1993), pet. denied, 39 M.J. 401 (C.M.A.1994).
Appellant’s remaining two assignments of error, which assert that he was prejudiced in the sentencing hearing by the admission of evidence that he had repeatedly declined to provide a urine specimen, and by admission of the cover sheet to the laboratory analysis of his specimen, are without merit. In the first place, appellant’s conditional plea of guilty preserved clearly only the issue of the admissibility of the urinalysis result on the basis that it was command-directed. Strict application of Mil.R.Evid. 304(d)(5), read in conjunction with R.C.M. 910(a)(2), might well compel a conclusion that the issues were waived. See United States v. Corcoran, 40 M.J. 478 (C.M.A.1994).
But even if preserved, Appellant’s repeated refusals to submit a urine specimen were not testimonial declarations, nor were they in response to an interrogation reasonably designed to elicit incriminating evidence. See United States v. Schroeder, 39 M.J. 471, 473 (C.M.A.1994); United States v. Burns, 33 M.J. 316, 319-20 (C.M.A.1991); United States v. Roa, 24 M.J. 297 (C.M.A.1987). Likewise, appellant’s obvious efforts to stall the taking of the urine specimen to maximize the time available for his body to rid itself of the incriminating THC was properly a matter in aggravation under R.C.M. 1001(b)(4). Certainly, the evidence would have been admissible in a contested trial on findings as tending to demonstrate consciousness of guilt. See United States v. Vickers, 13 M.J. 403, 406 (C.M.A.1982); cf. United States v. Rust, 41 M.J. 472, cert denied, — U.S. -, 116 S.Ct. 170, 133 L.Ed.2d 112 (1995).
Finally, in a guilty plea case, we hold the government was not required to put on an expert witness to explain the meaning of appellant’s positive urinalysis which showed 175 nanograms per milliliter (ng/ml), 160 over the Department of Defense (DoD) cutoff of 15 ng/ml. It was repeatedly made clear to appellant’s trial defense counsel that an expert was available to be called if appellant *754 wished to call him to offer possible explanations for the fact that appellant’s test was ten times that of the DoD threshold. Noting that there was no stipulation of fact, the judge did not err in allowing the government to put on evidence showing with more specificity the facts and circumstances of the crime.
We hold the findings and sentence to be correct in law and in fact, the sentence is appropriate, and they are
AFFIRMED.
Senior Judge PEARSON and Judge BECKER concur.

. 10U.S.C. § 912a (1988).

. 10U.S.C.§ 831 (1988).

. Of course, appellant did not disobey the original December 7 order, because he ultimately provided the sample within the 24 hours afforded him. This fortuity is of little significance, however, as we do not wish to imply that any member has the option to disobey an inspection order and preclude thereby any prosecution which might have been generated by a positive urinalysis.