**UNITED STATES**

v.

**Captain Walter L. GEISS, 513–48–9260 FV, United States Air Force.**

**ACM 27812.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 3 March 1989.

Decided 29 March 1990.

Appellate Counsel for the Appellant: Daniel L. Hawkley, Boise, Idaho; Colonel Richard F. O'Hair and Captain Bernard E. Doyle, Jr.

Appellate Counsel for the U.S.: Colonel Joe R. Lamport; Colonel Robert E. Giovagnoni; Major Terry M. Petrie; Major Paul H. Blackwell, Jr. and Lieutenant Colonel Barret E. Kean, U.S.A.F.R.

Before HODGSON, SPILLMAN and PRATT, Appellate Military Judges.

## DECISION

SPILLMAN, Judge:

Appellant is a former enlisted member who, at the time of trial, had over 19 years of active military service. Contrary to his pleas, he was convicted by a general court-martial, military judge alone, of rape, carnal knowledge, sodomy and conduct unbecoming an officer by committing indecent acts in violation of Articles 120, 125 and 133, UCMJ, 10 U.S.C. §§ 920, 925, 933.

All offenses occurred over extended periods of time, were committed on divers occasions and involved the same victim, MG, appellant's natural daughter who was 14 years old at the time of trial. MG is learning disabled and possesses an overall Intelligence Quotient (IQ) of 79; an IQ level of 80 to 120 is considered low to high normal. Nevertheless, she progressed to the eighth grade in special education classes and was doing well in school. Although her IQ has increased about seven points over the last few years, she has the mental capabilities of an average nine or ten year old. Notwithstanding her progress, MG is considered to be borderline mentally retarded.

In a brief supported by oral argument, the appellant assigned the following errors:

I

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT IN DENYING THE DEFENSE MOTION TO SUPPRESS THE TESTIMONY OF [MG] BECAUSE HER TESTIMONY WAS UNRELIABLE AND TAINTED BY SUGGESTIVE GOVERNMENT PRACTICES.

II

WHETHER THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BY THE COURT'S DENIAL OF DEFENSE MOTION FOR A CHANGE OF VENUE.

III

WHETHER THE APPROVED SENTENCE OF 20 YEARS CONFINEMENT WAS INAPPROPRIATELY SEVERE.

On about 15 October 1988, MG told her best friend, Jennifer, that the appellant had been abusing her both physically and sexually over a prolonged period. Jennifer told this to her mother, who in turn reported the matter to the base hospital, and on 21 October a Family Advocacy Outreach worker from the hospital arranged to meet with MG. Prior to the meeting, Ms. David, the social worker, was told "that the girl was being hit and that ... she was being touched." The meeting was held at the high school and lasted about 30 to 45 minutes. At trial Ms. David testified that her purpose was to assess the danger posed to MG and to determine if removal from the home would be appropriate. She characterized the interview as one where she listened while MG talked. Based on MG's comments that she was afraid and did not want to go back home and her revelations about beatings and having to masturbate appellant in the bathtub, Ms. David determined that MG should be removed from the home.

Later that afternoon, MG was interviewed by Agent C of the Office of Special Investigations (OSI); Ms. David was present to help establish rapport. Agent C made an audio recording of this session which was transcribed into a 24–page record. After this interview, MG prepared a four-page handwritten statement which outlined the nature of appellant's abuse of her. A subsequent interview was conducted on 23 October, again with Ms. David

present, and it resulted in a 69–page transcript. Both transcripts and MG's statement were considered by the military judge at trial.

## I

Appellant's assertion that MG's testimony should have been suppressed at trial is based on perceived suggestive questioning of her by the OSI agent and the agent's failure to follow an OSI regulation which contained recommended methods of interviewing child sexual abuse victims.

The transcript of MG's 21 October interview reveals that by page seven she had described the basic misconduct which ultimately was charged against appellant. For the remainder of the two interviews, Agent C inquired into the sequence of events and the location of offenses as he attempted to obtain more graphic explanations of appellant's misconduct. In this regard, his questioning was unplanned and somewhat disorganized, and he frequently interrupted answers; his questions were overly complex and sometimes suggestive; and his interview technique did not comport with the recommended procedures outlined in Air Force Office of Special Investigations Regulation 124–81, *Interviews and Interrogations*, paras. 13 and 14 (Oct 1987).[1] As he admitted on cross-examination, Agent C did not review the regulation prior to the interviews; he thought his "experience in interviewing individuals was good enough."

At trial an Air Force psychiatrist testified as an expert witness regarding MG's learning disability and personality make-up. *See United States v. Jones*, 26 M.J. 197 (C.M.A.1988). She described MG as a young girl who possesses the ability to learn and memorize, but who must use all of her senses in the learning process. She has difficulty in conceptualizing, and her ability to form original thoughts or to fantasize is very limited. In addition, MG has considerable difficulty with time sequencing and chronologies of events. In the expert's opinion, MG would have great difficulty fabricating the allegations against appellant due to her limited mental capabilities and her inability to describe or communicate about matters she has not actually experienced.

■ Our review of MG's testimony at trial, and more importantly, the transcripts of the OSI interviews and her 21 October statement, convinces us that "suggestive questions" did not cause MG to make false accusations against the appellant. On several occasions during the interviews, MG steadfastly maintained her position despite Agent C's questioning of her statements. The most apparent of these situations was her insistence that appellant licked her vagina only one time. Similarly, the risk of confabulation in her testimony, or the filling in of "details from the imagination in order to make an answer more coherent and complete,"[2] as argued by civilian defense counsel at trial and before this Court, is not supported by the evidence. The trial judge's finding that MG "was not manipulated or suggested into confabulating allegations sufficient to warrant suppression of her testimony" was not clearly erroneous. To the contrary, it was fully supported by the evidence of record. *United States v. Jenkins*, 24 M.J. 846 (A.F.C.M.R. 1987), *petition den.* 26 M.J. 70 (C.M.A. 1988).

■ Defense counsel's attempt to suppress MG's testimony due to confabulation or the risk of suggestive questioning was based on a novel legal argument. He

---

1. This regulation is commended to Staff Judge Advocates, OSI Detachment Commanders, Hospital Commanders and their staffs who should be thoroughly familiar with the enlightened techniques recommended to avoid influencing the outcome of child witness or victim interviews. This is particularly important in those situations where action under the UCMJ could result. Regarding appellant's suggestion that violation of this regulation by an OSI Agent de-

nied him a fair trial, the preamble of AFOSI Reg 124–81 states in part: "It is not the intent of this regulation to confer rights upon any person or to impose constraints more restrictive than those of the United States Constitution or Uniform Code of Military Justice."

2. *See United States v. Robinson*, 26 M.J. 361, 365 n. 6 (C.M.A.1988); *cert. denied*, 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989).

urged that the rationale of Mil.R.Evid. 321, governing the admissibility of eyewitness identifications, be applied in the following manner: Once the risk of suggested or confabulated testimony is established, the prosecution would be required to prove by clear and convincing evidence that the testimony at trial is not the result of suggestive or coercive pretrial interviews. We decline to make this leap in logic, as did the trial judge.

■■■ Under Mil.R.Evid. 601, with certain exceptions specified by the rules, "every person is competent to be a witness." This includes learning disabled child victims of sexual abuse who have been interviewed pretrial under less than ideal circumstances. In this regard, we hold that evidence of suggestive questioning or coercive pretrial interviews goes to the credibility of a witness rather than to the admissibility of testimony. *See United States v. Robinson, supra,* citing *Rock v. Arkansas,* 483 U.S. 44, 107 S.Ct. 2704, 2713, 97 L.Ed.2d 37 (1987), for a similar rationale regarding hypnotically-refreshed testimony. We believe that the intelligent use of audio/video recordings of well-planned victim interviews, background investigations and proper coordination, visual aids such as anatomically correct dolls and drawings or diagrams, sworn statements and other techniques outlined in AFOSI Reg 124–81 represent highly advisable means of reducing the possibility that the testimony of child abuse victims may be tainted during the investigative process. However, failure to utilize these techniques fully, as in the case at bar, while perhaps rendering such testimony suspect, does not warrant the imposition of a Mil.R.Evid. 321 burden on the prosecution as a necessary means of protecting the rights of an accused. As Chief Judge Everett observed in *Robinson,* at 369, quoting Justice Blackman in *Rock,* conventional means of assessing the accuracy of testimony such as cross-examination, corroborating or contradictory evidence, expert testimony and cautionary instructions are also available at trial. We are satisfied that these additional safeguards afford ample protection for an accused.

## II

■■■ At trial civilian defense counsel moved for a change of venue to the United States where a civil court could appoint a *guardian ad litem* for MG. The military judge, within his sound discretion, properly denied this motion under R.C.M. 906(b)(11). Later in the trial, defense counsel advised the military judge that, as a result of his earlier ruling and at the direction of appellant, he would forego cross-examination of MG to avoid subjecting her to additional emotional trauma.

■■■ Before this Court, counsel reasserts that the decision not to cross-examine MG was occasioned by the trial judge's ruling which precluded removal of the trial to the United States and the appointment of a guardian to protect MG's interests. As stated in his appellate brief, "Confronted with the choice of having his attorney exploit the weaknesses of his daughter or being deprived of a fair trial by the manner in which the government had prepared its case, the appellant elected to forfeit the fair trial."

While we find the appellant's belated expression of concern for the well-being of his daughter to be commendable, we are satisfied that any error resulting from the defense decision not to cross-examine MG was induced by appellant and his counsel. Since the military judge did not abuse his broad discretion in denying appellant's motion to remove the proceedings to the United States, we further find that error prejudicial to the substantial rights of the appellant could not result from such ruling.

Notwithstanding the protestations of counsel that this was a decision made by his client, the American Bar Association Standards of Criminal Justice, 2ed., 1982 Supp., Vol. 1, The Defense Function, Standard 4–5.2(b), Control and Direction of the Case, makes it clear beyond cavil that the decision whether to cross-examine a particular witness ... "and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation

with the client."[3] In the Strategy and Tactics section of the Standard's Commentary, the drafters remind us that convictions have been reversed where the actions of counsel, such as failing to cross-examine, were not strategic or tactical decisions, "but, rather, revealed ineptitude, inexperience, lack of preparation, or unfamiliarity with basic legal principles amounting to ineffective assistance of counsel."[4]

In this case civilian defense counsel was obviously competent and thoroughly prepared for trial. It was apparent he had interviewed all witnesses prior to trial and, in fact, had cross-examined MG extensively at the Article 32 investigation. Furthermore, at trial the appellant offered to leave the courtroom while MG testified. His purpose, as expressed by counsel, was to avoid further traumatizing the young girl. MG declined and stated that she wanted her father present in the courtroom during her testimony.

■ Under these circumstances, we conclude that the decision to forego cross-examination of MG was a tactical or strategic decision made jointly by the appellant and his counsel, a well-qualified and experienced litigator. As such, we find the appellant's claimed denial of effective assistance to be entirely without merit. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

### III

■ Regarding the appropriateness of that portion of the approved sentence providing for 20 years confinement, we recognize that the appellant was an excellent duty performer for over 19 years. However, the aggravated nature of his offenses, the frequency and duration of his crimes and his resort to forceful and degrading parental coercion on numerous occasions satisfies us that the approved sen-

tence to confinement is just and appropriate. *United States v. Healy*, 26 M.J. 394 (C.M.A.1988). Article 66(c), UCMJ, 10 U.S.C. § 866(c), having been complied with, the approved findings and sentence are AFFIRMED.

Chief Judge HODGSON and Judge PRATT concur.

---

3. The Air Force adopted the ABA Standards of Criminal Justice in Air Force Regulation 111–1, *Military Justice Guide*, para. 1–6 (Sep 88), and adopted this particular Standard in a predecessor AFR 111–1, and by HQ USAF special subject letter, ABA Criminal Standards (JAJ 83–2), dated 17 October 1983. OTJAG Letter 89–5, Rules of Professional Responsibility and Air Force Standards for the Administration of Criminal

Justice, dated 4 December 1989, is the latest iteration reflecting Air Force implementation of Standard 4–5.2.

4. *Citing Bell v. Georgia*, 554 F.2d 1360 (5th Cir. 1977); *Pinnell v. Cauthron*, 540 F.2d 938 (8th Cir.1976).