OPINION OF THE COURT
PEARSON, Senior Judge:
Court members convicted appellant of sexually abusing a friend’s 4-year-old daughter, Jessica, and sentenced him to a dishonorable discharge, 7 years confinement, and reduction to E-l, which the convening authority approved. Appellant contends the military judge erred in admitting a videotaped interview with Jessica under the miscellaneous, or residual, exception to the hearsay rule; a nurse gave inadmissible testimony about Jessica’s injuries; the prosecutor made an improper closing argument; and his sentence is too severe. We find the alleged errors lack merit and affirm.
FACTS
On Friday, January 22, 1993, appellant’s wife babysat Jessica. At about 6 p.m., Jessica’s mother, Mrs. J, picked-up Jessica without incident. Sometime that evening while watching television, Jessica told her mother, “I’m hurt, my hoi.”
Mrs. J knew that “hoi,” a Thai term, was Jessica’s word for vagina. She examined Jessica and found redness around the vagina. When Mrs. J asked Jessica why her “hoi” was red, Jessica replied “Lumac play too rough with me.” Mrs. J knew that “Lumac” was Jessica’s nickname for appellant. Mrs. J asked Jessica what “play too rough” meant, and Jessica placed her hand on her vagina and began rubbing up and down.
The next day, Mrs. J took Jessica to a doctor who confirmed the redness. On Sunday, Mrs. J decided to report the incident to the local civilian police, but she first asked Jessica to tell her exactly what happened, stressing the importance of telling the truth. Jessica said appellant took her upstairs where he undressed her, and both licked and fingered her vagina. Jessica then described how appellant pulled out his “ding dong” and “slapped” it real fast. Jessica said she ran downstairs but appellant followed. In the kitchen, he placed her on the floor and once again licked her vagina. Jessica said appellant stopped only when his wife came home.
Ultimately, Jessica ended up at the Air Force Office of Special Investigations (AFO-SI) for a videotaped interview on February 1, 1993. Agent Chambers, the interviewing agent, spent 20-30 minutes establishing “rapport” with Jessica which he did not tape. However, once he started asking questions, he started taping. At Agent Chamber’s request, Jessica explained the difference between a “good” and “bad” touch, and between the truth and a lie. Jessica then recounted the incident with appellant much the same as she told her mother. Agent Chambers asked only one leading question, if appellant showed her his “ding dong.” Jessi *808 ca replied that appellant “spanked it” and “played with it.”
On February 2, 1993, a sexual assault nurse examiner interviewed Jessica who again recounted her incident with appellant. The nurse found an injury to Jessica’s vagina consistent with digital penetration and a healing tear or fissure to her anus.
Jessica appeared as a witness at the pretrial investigation convened under Article 32, Uniform Code of Military Justice. 10 U.S.C. § 832. However, she refused to answer questions. Based on Agent Chambers’ rapport with Jessica, the Article 32 investigating officer had Agent Chambers question Jessica at the AFOSI interview room so Jessica would be in familiar surroundings. All parties viewed the questioning from an adjoining room and could submit questions, and Jessica’s testimony was videotaped. She once again gave a consistent description of the incident with appellant.
At trial, Jessica, now age 5, appeared as a witness at an evidentiary hearing but refused to answer any .questions. See Article 39(a), UCMJ, 10 U.S.C. § 839(a). The military judge declared her unavailable for hearsay statement purposes. See Mil.R.Evid. 804(a). The prosecutor then moved to admit the February 1st videotaped interview between Jessica and the AFOSI agent.
In support of his motion, the prosecutor called Dr. Ebert, a forensic psychologist and attorney, who had reviewed the available evidence and interviewed Jessica. Dr. Ebert testified Jessica could not testify effectively for either side through any means of questioning. However, Dr. Ebert had also reviewed Jessica’s videotaped interview with Agent Chambers. Dr. Ebert believed the language and physical expressions that Jessica used during the interview originated with her instead of others, and the sexual acts she described were not in the common experience of a 4-year-old.
After reviewing the tape himself, the military judge reached the same conclusions as Dr. Ebert, finding “no evidence of suggested answers, rehearsed answers, or inappropriately leading questions.” The judge admitted the videotaped interview with Agent Chambers as residual hearsay under Military Rule of Evidence (Rule) 804(b)(5). The judge also admitted Jessica’s initial statements to her mother on January 22nd as statements of physical condition and for medical treatment under Rules 803(3) and (4), respectively. However, the military judge declined to admit any of Jessica’s other hearsay statements or her videotaped Article 32 testimony.
THE RESIDUAL HEARSAY

Appellant’s Argument

Appellant does not contest the judge’s ruling admitting Jessica’s initial statements to her mother, but focuses on her videotaped interview with Agent Chambers. He argues we should direct a hearing where the government must show by “clear and convincing evidence” that Jessica’s interview was not tainted by any improper investigative techniques Agent Chambers may have used, such as not videotaping the “rapport” session. Cf. State v. Michaels, 136 N.J. 299, 642 A.2d 1372 (1994) (reversing child sexual abuse convictions based on “highly improper,” “coercive,” and “unduly suggestive” investigative interview techniques which tainted children’s in court testimony and ordering “taint” hearing).
Appellant also urges us to adopt definitive procedural safeguards for pretrial interviews of young children which must be complied with as a predicate to the admission of a child victim’s residual hearsay statement. We decline appellant’s invitation to legislate and, instead, follow established case law.

Procedural Safeguards

As a matter of federal constitutional law, the United States Supreme Court has rejected any formalistic checklist for investigative interviews of child sexual abuse victims as a condition precedent to admitting a victim’s statement under the residual hearsay rule. Instead, the Court has focused on whether the statement has “particularized guarantees of trustworthiness” surrounding its making “which render the declarant particularly worthy of belief.” Idaho v. Wright, 497 U.S. 805, *809 819-20, 110 S.Ct. 3139, 3148-49, 111 L.Ed.2d 638 (1990).
Such “guarantees of trustworthiness” include, but are not limited to, spontaneity, consistency, terminology unexpected of a child of similar age, lack of motive to fabricate, and the mental state of the declarant, based on the totality of circumstances. When these “guarantees” are present, the statement passes muster under the Confrontation Clause of the Sixth Amendment even though the declarant does not testify at trial under the rigor of cross-examination. Id.
The military’s residual hearsay rule for an unavailable declarant tracks the Supreme Court’s guidance. See Mil.R.Evid. 804(b)(5). The hearsay statement must have “circumstantial guarantees of trustworthiness” equivalent to long recognized, or “firmly rooted,” hearsay exceptions. United States v. Ureta, 41 M.J. 571, 575-76 (A.F.Ct.Crim. App.1994) and cases cited therein. Even if it passes such reliability muster, the statement is admissible only when (1) offered as evidence of a material fact, (2) more probative on the point for which it is offered than any other evidence reasonably obtainable, and (3) its admissibility serves the interests of justice. Mil.R.Evid. 804(b)(5).

Standard of Review

In deciding whether a military judge erred in admitting a child’s statement under our residual hearsay rule, we use an abuse of discretion standard. In applying that standard, we generally accept the military judge’s findings of fact unless they are unsupported by the evidence or are clearly erroneous. United States v. Pollard, 38 M. J. 41, 49 (C.M.A.1993); Ureta, 41 M.J. at 575. Where the military judge’s findings are silent or clearly erroneous, we may exercise our statutory discretion under 10 United States Code Section 866(c) and find the facts ourselves. Ureta, 41 M.J. at 575.

Discussion

The materiality of Jessica’s statement, its probative value, and its contribution to the interests of justice are not in issue — its reliability is. We have independently reviewed Jessica’s videotaped interview, as well as the testimony of Agent Chambers. We conclude the military judge’s factual findings are not clearly erroneous, and he did not abuse his discretion in admitting the evidence.
First, Jessica was “functionally unavailable” as a witness for residual hearsay analysis. United States v. Martindale, 30 M.J. 172, 173 (C.M.A.1990). In this regard, defense counsel did not request to call Jessica to the witness stand in front of the members so they could judge her demeanor for credibility purposes or otherwise assert appellant’s Sixth Amendment right to confront his accuser. See id. at 175 n. 2.
Second, in the videotape, Jessica used a young child’s language to describe sexual acts not within the common experience of a 4-year-old. Third, Agent Chambers adequately explained his failure to videotape the “rapport session,” and Jessica’s description of the sexual acts was not prompted by leading questions. Fourth, appellant did not offer any plausible motive for Jessica to fabricate such a sordid story, and like the military judge, we find none. See Pollard; Ureta; compare United States v. Lyons, 36 M.J. 183 (C.M.A.1992) (not error to admit videotaped interview) with United States v. Moreno, 36 M.J. 107, 120-121 (C.M.A.1992) (error to admit videotaped interview). Consequently, Jessica’s statement possessed circumstantial guarantees of trustworthiness.
However, we do not encourage investigators to selectively videotape their contact with child witnesses — all of the interview should be taped, including “rapport” building sessions. In a closer case, an investigator’s failure to tape an initial “rapport” session could be the scale-tipper.

Taint Hearing and Clear and Convincing Standard

Appellant’s argument for a “taint” hearing is not a novel one for this Court. In United States v. Geiss, 30 M.J. 678 (A.F.C.M.R.), pet. denied, 32 M.J. 45 (C.M.A 1990), we rejected the argument that the prosecution had to prove by clear and convincing evidence that a 14-year-old accuser’s in court testimony was not the result of *810 suggestive or coercive pretrial interviews. Instead, we held that the evidence of the suggestive or coercive nature of the interview went to the credibility of the child’s testimony and not its admissibility.
Today, we reaffirm our holding in Geiss. Of course, here, we are not dealing with the impact of pretrial questioning on a child witness’s in court testimony as in Geiss. Rather, we are concerned with the particularized, or circumstantial, guarantees of trustworthiness of a child’s out-of-court statement. As already discussed, suggestiveness and coerciveness factor in to the totality of the circumstances equation — they are not “the be-all and the end-all here.” William Shakespeare, Macbeth, act 1, sc. 7.
REMAINING ISSUES
Appellant did not object to the nurse examiner’s testimony that Jessica’s injuries were consistent with sexual abuse. Consequently, appellant forfeited the issue, and we do not find plain error. Mil.R.Evid. 103(a)(1); see United States v. Prevatte, 40 M.J. 396, 397 (C.M.A.1994); United States v. Banks, 36 M.J. 150, 160 (C.M.A.1992); United States v. Suarez, 35 M.J. 374 (C.M.A. 1992). Likewise, appellant now complains about the prosecutor’s closing argument but did not object at the time. We find the error forfeited and no plain error. R.C.M. 919(c); United States v. Edwards, 35 M.J. 351 (C.M.A.1992).
Finally, we do not find appellant’s sentence to a dishonorable discharge is cruel and unusual punishment or too severe even though he completed more than 20 years of active duty, which made him eligible for retirement. See United States v. Lee, 43 M.J. 518 (A.F.Ct.Crim.App.1995); United States v. Smith, 28 M.J. 863 (A.F.C.M.R.), pet. denied; 28 M.J. 455 (C.M.A.1989).
Accordingly, the findings and sentence are correct in law and fact, and on the basis of the entire record, are
AFFIRMED.
Judges BECKER and MORGAN concur.