UNITED STATES, Appellee,

v.

Matthew G. CABRAL, Jr., Master
Sergeant, U.S. Air Force,
Appellant.

No. 96–0596.
Crim.App. No. 30953.

U.S. Court of Appeals for
the Armed Forces.

Argued March 5, 1997.

Decided Sept. 30, 1997.

Certiorari Denied Feb. 23, 1998.
See 118 S.Ct. 1049.

Sullivan and Effron, JJ., filed opinions
concurring in the result.

For Appellant: *Lynmarie Cusack* (argued); *Gary Myers* and *Major Ormond R. Fodrea* (on brief); *Colonel Jay L. Cohen, Lieutenant Colonel Kim L. Sheffield,* and *Captain Richard D. Desmond.*

For Appellee: *Captain Deborah M. Carr* (argued); *Colonel Theodore J. Fink* and *Lieutenant Michael J. Breslin* (on brief); *Colonel Jeffery T. Infelise.*

*Opinion of the Court*

CRAWFORD, Judge:

Contrary to his pleas, appellant was convicted of attempted sodomy with a child under the age of 16 and taking indecent liberties with and committing indecent acts upon a child under the age of 16, in violation of Articles 80 and 134, Uniform Code of Military Justice, 10 USC §§ 880 and 934, respectively. The convening authority approved the sentence of a dishonorable discharge, 7 years' confinement, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence. 43 MJ 808. We granted review of the following specified issue:

WHETHER APPELLANT WAS DE-PRIVED OF THE OPPORTUNITY FOR EFFECTIVE CROSS–EXAMINA-TION.[1]

We hold that there was no violation of appellant's Sixth Amendment right and that the judge did not abuse his discretion in admitting the videotape of the victim.[2]

## FACTS

On January 22, 1993, while watching television, 4–year–old J told her mother that her vaginal area hurt. Her mother took her to the restroom, thinking that she needed to be cleaned up but noted a red irritated spot on J's vagina. When asked how this happened, J informed her mother that appellant, her babysitter's husband, "play so rough with me." J's mother and father decided to confront the Cabrals that evening over the telephone. Thereafter, appellant asked about their plans concerning the allegations. J's father informed appellant that they would take J to the clinic the next day. After the call from J's parents, appellant and his wife called J's house that night so many times that J's mother had to take the phone off the hook.

The next day, Saturday, J was examined by a nurse-practitioner who noted the irritation in J's vaginal area. Because she did not have the equipment for further examination, she referred J to a specialist. After the examination on Saturday, appellant called J's mother and said, "Please do not report" this. He said that he would lose his retirement and that he had a family to support. Later that day, immediately before making a report to the police department, J's mother went to appellant's house. At that time, appellant asked if J's mother had been seen by the Child Protective Services. Her mother did not understand and asked "What is Child Protective" Services? Appellant responded, "You will find out. You will be sorry."

On January 27, 1993, five days after J initially reported this incident to her parents, appellant submitted his retirement papers.

On February 1, 1993, nine days after J's abuse was discovered, she had a videotaped interview with Special Agent (SA) Chambers of the Air Force Office of Special Investigations (OSI). During this interview, J detailed the abuse in response to non-leading questions.

On February 2, 1993, J was taken to the emergency room in the San Antonio Community Hospital where she was examined by a nurse who specialized in sexual assaults. Ms. Ann Kristine Rowney took pictures of J's vaginal area. These pictures showed "a thinning or a sparing [sic] of the tissue" at the base of the vaginal opening and an "abrasion on the inner aspect of her left labia majora, which is in the vestibule." These observations are consistent with findings of sexual abuse, especially the abrasion in the vestibule area. The thin tear by the anus was less suspicious.

On April 14, 1993, J appeared at appellant's hearing under Article 32, UCMJ, 10 USC § 832, but was reluctant to answer questions. The next day, SA Chambers sat with J at the OSI office and asked her questions presented by the Government and the defense. The parties watched from an adjoining room. The examination was videotaped. A 20–minute rapport session was not videotaped. However, SA Chambers testified that he did not ask J any questions about the alleged abuse during that session.

On a prosecution motion to admit the first videotape statement to SA Chambers, J was called as a witness. However, after she was unable to answer questions even as to her name, the judge asked the defense if they had been able to talk to her. Trial defense counsel stated that there had been "a very non-informative meeting" at her house the previous night. The judge asked if the defense would like another attempt to talk with the child. The individual military counsel replied, "Well, Your Honor, I'm not waiving any right to cross-examine her, but under the

---

1. We also granted review of "whether petitioner's punitive discharge violates both the Fifth and Eighth Amendments to the Constitution." Appellant concedes that this was adversely decided against him in *United States v. Sumrall*, 45 MJ 207 (1996).

2. The challenge on appeal is as to admissibility of the videotape of the statement given to Special Agent Chambers.

circumstances it looks to me like she's not available to testify in this courtroom."

Later an expert, Dr. Ebert, testified that J was not able to testify in a manner that would produce effective examination from either side. Dr. Ebert further testified that J would absolutely not be able to testify in open court and that he did not see a closed-circuit camera "as being an effective method either."

After this testimony, the military judge found J unavailable as a witness under Mil. R.Evid. 804(a), Manual for Courts–Martial, United States (1995 ed.), and admitted the videotapes and the statements under Mil. R.Evid. 804(b)(5), the residual-hearsay rule. The military judge relied on the following indications of the statements' trustworthiness:

Fifth, I find that the videotape of 1 February 1993 is admissible as residual hearsay and does not violate the accused's right to confrontation in this case.

Sixth, I find that the 1 February 1993 videotape interview is the most probative evidence of the two sources of evidence. The court members will be able to directly observe the demeanor of [J] as she responds to questions. Furthermore, the court members will hear her testimony directly without a third party, the mother, recalling what the child said to her.

Seventh, I find that the 1 February 1993 videotape is more probative on the points for which it is offered than any other evidence which the Government can procure through reasonable efforts. In fact since the child is unavailable, it is the only evidence other than the testimony of the mother that describes all of the alleged acts committed against the child by the accused.

Eighth, I find that the offered testimony of [J] has the circumstantial guarantees of trustworthiness as follows:

First, the seriousness of the allegations made against the accused was emphasized by Special Agent Chambers.

Second, the necessity for honesty was emphasized to the child, and she repeated-ly acknowledged that she would be truthful.

Third, the questions asked of [J] were not leading or overly suggestive in light of [J]'s age of 4 years old at the time of the videotape. The questions may not have been objectionable in court during her testimony on direct examination had she been available.

Fourth, the questions by Special Agent Chambers and answers of [J] were not rehearsed.

Fifth, it would have been almost impossible for a 4–year–old child to fabricate an entire incident as complex as the one described in the videotape.

Sixth, [J] is very honest in the sense that she was still young enough at the time that she lacked inhibitions which would cause her to hold back information. A 4–year–old child lacks knowledge of the sexual world which would enable her to be creative in this area.

Seventh, [J]'s information and knowledge with regard to the alleged sexual offenses is not within the realm of common knowledge for a normal 4–year–old child. There has been no credible evidence presented that this knowledge could have been acquired by [J] in any other way than as a victim of sexual assault by the accused in the time frame, the place, and the manner alleged.

Eighth, the language used by the child in describing the sexual acts which allegedly occurred are age-appropriate for a 4–year–old child. The language itself used by the child is strong evidence that the child was not coached by an adult, but was using her limited terminology and knowledge of the ways of the world to describe what she actually observed and experienced.

Ninth, no cogent motivation for the child to lie was suggested.

Tenth, the child was speaking from first-hand knowledge.

And finally, the circumstances of giving the statement were neither coercive or unduly suggestive.

My ninth conclusion of law includes the finding that the general purpose of these rules and the interests of justice will be served by admission of the videotape into evidence. There is no other evidence to be presented to the trier of fact available in this case.

## DISCUSSION

 The Sixth Amendment guarantees servicemembers the right of compulsory process and confrontation. In *Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980), the Supreme Court expressed a preference for face-to-face confrontation at trial. Hearsay is constitutionally admissible against the accused when the witness is unavailable and the hearsay statement falls within a firmly rooted exception[3] or has "particularized guarantees of trustworthiness." *Idaho v. Wright,* 497 U.S. 805, 816, 110 S.Ct. 3139, 3147, 111 L.Ed.2d 638 (1990), quoting *Roberts, supra* at 66, 100 S.Ct. at 2539.

As to the constitutional requirement of showing unavailability, the Court in *White v. Illinois,* 502 U.S. 346, 354, 112 S.Ct. 736, 741, 116 L.Ed.2d 848 (1992), announced "that [the] unavailability analysis is a necessary part of the Confrontation Clause inquiry only when the challenged out-of-court statements were made in the course of a prior judicial proceeding." But *White* did not eliminate the requirement that the statement fall under a firmly rooted exception or be reliable. *Id.* at 355–57, 112 S.Ct. at 742–43. However, as we have indicated in past opinions, a finding of unavailability is relevant in deciding what factors may be employed in determining the reliability of the out-of-court statement.[4]

Chief Justice Rehnquist recognized that *Roberts*

> might suggest that the Confrontation Clause generally requires that a declarant either be produced at trial or be found

unavailable before his out-of-court statement may be admitted into evidence. However, we think such an expansive reading of the Clause is negated by our subsequent decision in [*United States v.*] *Inadi,* [475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986) ].

*White, supra* at 353, 112 S.Ct. at 741.

While *Inadi* involved evaluating statements of co-conspirators, its "observations" apply with full force to excited utterances and statements admitted under the medical exception because these statements cannot be duplicated simply by the declarant later testifying in court. *Id.* at 355–56, 112 S.Ct. at 742–43. The same rationale might not be applied so easily to a statement to a police officer.

In any event, the Court in *White* rejected White's argument that *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), would apply. *Id.* at 358, 112 S.Ct. at 743–44. It noted, that "*Craig* involved only the question of what *in-court* procedures are constitutionally required to guarantee a defendant's confrontation right once a witness is testifying." *Id.*

We have been very cautious about admitting pretrial statements by child victims made to the police under the residual-hearsay rule. *See United States v. Casteel,* 45 MJ 379 (1996); *United States v. Ureta,* 44 MJ 290 (1996); *United States v. McGrath,* 39 MJ 158 (CMA 1994); *United States v. Pollard,* 38 MJ 41 (CMA 1993); *United States v. Giambra,* 38 MJ 240 (CMA 1993). We have expressed some reservations about these statements, *see, e.g., United States v. Barror,* 23 MJ 370, 372 (CMA 1987), but have declined to adopt a rule rejecting statements to the police as *per se* unreliable. *United States v. Hines,* 23 MJ 125, 136 (CMA 1986).

### Availability

 *White v. Illinois, supra,* recognized that the requirement of showing unavailabili-

3. There are a number of firmly rooted exceptions: *White v. Illinois,* 502 U.S. 346, 355, 112 S.Ct. 736, 742, 116 L.Ed.2d 848 (1992) (excited utterance and medical exception); *United States v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986) (statement of co-conspira-

tors); *United States v. Jacobs,* 44 MJ 301, 306 (1996) (declaration against interest).

4. *See, e.g., United States v. McGrath,* 39 MJ 158 (CMA 1994).

ty could not apply across the board to the more than 25 exclusions and exceptions for admitting hearsay statements. 502 U.S. at 356–57, 112 S.Ct. at 742–43. Assuming availability need not be shown for statements of co-conspirators, excited utterances, and statements under the medical exception, the evidence in this case clearly supports the military judge's finding that J was unavailable under Mil.R.Evid. 804(a)(2) ("persists in refusing to testify concerning the subject matter ...").

J was unable to communicate beyond the word "fine" when she was first brought into the courtroom.

J sat in the courtroom leaning her head against the side of the witness stand.

Dr. Ebert, an expert, testified that J would be unable to testify in open court or via closed-circuit television.

J was unable to testify at the Article 32 hearing in the presence of anyone except SA Chambers.

Trial defense counsel indicated a belief that J was unavailable by stating:

> I'm not waiving any right to cross-examine her, but under the circumstances it looks to me like she's not available to testify in this courtroom.... Well, there's no point in bringing her in here to have her cry. If she's not going to answer questions for the prosecution, I can't imagine she would answer them for me.

Considering J's age of 4 years, demeanor, and past experiences at the Article 32 hearing, as well as trial defense counsel's acknowledgment of unavailability (to a limited extent), and Dr. Ebert's testimony that J would be unable to communicate effectively, we hold that J was unavailable under Mil.R.Evid. 804(a) and also under constitutional standards.

### Trustworthiness

J's statements in the videotape have the constitutionally required indicia of reliability.

In *Wright*, 497 U.S. at 805, 110 S.Ct. at 3139, the Supreme Court reversed the conviction of an accused child molester because the hearsay statements admitted against him under the residual-hearsay rule for unavailable witnesses did not possess an adequate indicia of reliability. The Court noted that the residual-hearsay exception is not firmly rooted and, therefore, one cannot infer reliability from the nature of the exception. *Id.* at 817, 110 S.Ct. at 3147. The Court held that the indicia of reliability must arise "from the circumstances in which the statement was made." *Id.* at 821, 110 S.Ct. at 3150. The Court noted that indicia of reliability include spontaneity, consistent repetition, mental state of the declarant, terminology unexpected of a child, and lack of motive to fabricate. *Id.* Corroborating evidence of the crime is not an adequate indicia of reliability when confrontation has not been satisfied. *Id.* at 826–827, 110 S.Ct. at 3152–3153. Further, in that case, the interview with the child was not videotaped, involved leading questions, and was asked with a "preconceived idea of what the child should be disclosing." *Id.* at 812–813, 110 S.Ct. at 3144–3145.

This Court has adopted additional factors as well, including the length of time between the incident and the hearsay statements, and whether the witness admitted the truth of the hearsay statements under oath. *United States v. Morgan*, 40 MJ 405, 408 (CMA 1994); *McGrath*, 39 MJ at 158. This Court has also noted that corroborating evidence may be used to show the trustworthiness of residual hearsay when the witness is available for cross-examination, although that is not the situation in the case at bar. *Ureta*, 44 MJ at 296, citing *McGrath, supra* at 164–67.

In the case at bar, there are abundant indicia of reliability:

●Spontaneity: J answered non-leading questions regarding the incident with detail. For example, when asked, "What were you doing in the kitchen?" J responded, "He don't let me out; he say, 'Stay there.'"

●Consistent repetition: J's story did not change throughout the interview. Her account of events remained basically the same.

●Terminology: J used child-like terminology in explaining events. For example, she

spoke of appellant "spanking" his "ding-dong."

●Lack of motive to fabricate: J had no known reason to fabricate the events.

J's videotaped interview elicited detailed answers about events that a 4–year–old should not know. It is doubtful that any 4–year–old could remember a lie in that much detail. In addition, the videotape provided the members with the opportunity to view the child's demeanor, her confusion on occasion, and her communication skills. There were few leading questions during the interview, and SA Chambers did not suggest appellant was the perpetrator. The videotaped interview shows numerous indicia of reliability.

J's unavailability and the trustworthiness of the videotape reveal that there was no Confrontation Clause violation in admitting the videotape under the residual hearsay exception.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX and Judge GIERKE concur.

SULLIVAN, Judge (concurring in the result):

I join my Brother, Judge Effron, in his separate opinion in this case. Moreover, I do not agree that evidence corroborating the occurrence of a crime may be used to show trustworthiness of residual-hearsay evidence when the out-of-court declarant is available for cross-examination. See United States v. McGrath, 39 MJ 158, 169 (CMA 1994) (Sullivan, C.J., dissenting). Neither does the 10th Circuit which recently said:

The precise issue in Idaho v. Wright was not the admissibility of evidence under Rule 803(24). Rather, the petitioner in Wright challenged the admission of a hearsay statement on Confrontation Clause grounds. 497 U.S. at 808, 110 S.Ct. at 3143. One of the requirements of the Confrontation Clause, however, is that the hearsay statement "bear[ ] adequate 'indicia of reliability.'" Id. at 814, 110 S.Ct. at 3146 (internal quotation marks omitted).

It was this requirement that the Court discussed at length in Wright. In doing so, it cited and discussed several lower court decisions that identify factors which should be considered in assessing the reliability of out-of-court statements by child witnesses in sexual abuse cases. Id. at 821–22, 110 S.Ct. at 3149–50. Importantly, each of the cases cited by the Court addressed the admissibility of such statements under exceptions to the hearsay rule—not the Confrontation Clause. Indeed, two of the cases involved the reliability requirement of the residual hearsay exception. See Arizona v. Robinson, 153 Ariz. 191, 735 P.2d 801, 811 (1987); Wisconsin v. Sorenson, 143 Wis.2d 226, 421 N.W.2d 77, 83–86 (1988). In essence, the Court saw no meaningful distinction between Rule 803(24)'s requirement that a statement have "circumstantial guarantees of trustworthiness" and the Confrontation Clause requirement that it "bear adequate indicia of reliability." Thus, even though Wright is technically a Confrontation Clause case, its discussion of the reliability of hearsay statements by child victims of sexual abuse is equally pertinent to both Confrontation Clause cases and Rule 803(24) cases.

United States v. Tome, 61 F.3d 1446, 1452 n. 5 (1995).

Accordingly, I disagree with the majority on this point.

EFFRON, Judge (concurring in the result):

In this case, the primary evidence against appellant consisted of accusatory hearsay evidence in the form of a videotaped interview of a 4–year–old child by a law enforcement officer. As the majority notes, the Supreme Court has stated that the Sixth Amendment right to confrontation does not establish a per se prohibition against use of accusatory hearsay testimony. See, e.g., Ohio v. Roberts, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980). The Supreme Court, however, has established a high hurdle that must be surmounted when the accusatory hearsay is offered under a residual exception

to the hearsay rule, rather than under one of the traditional, or "firmly rooted," exceptions. *See Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) (excluding doctor's testimony about accusatory statement of alleged victim in child sexual abuse case under specific circumstances of case). I write separately to emphasize that my concurrence in the result is based upon the specific circumstances of this case.

In *Wright,* the Supreme Court stated that an accusatory hearsay statement could be admitted only if the statement bore "adequate indicia of reliability." 497 U.S. at 815, 110 S.Ct. at 3146 (internal quotation marks omitted). The Court added that reliability could be inferred "where the evidence falls within a firmly rooted hearsay exception," *id.,* such as the "excited utterance" exception. *Id.* at 820, 110 S.Ct. at 3148; *see* Mil.R.Evid. 803(2), Manual for Courts–Martial, United States (1995 ed.). The Court emphasized, however, that because the residual hearsay exception did not fall within a "firmly rooted hearsay exception," an accusatory statement offered under that exception was "presumptively barred by the hearsay rule and the Confrontation Clause." *Id.* at 816–17, 110 S.Ct. at 3147–48. The presumptive exclusion could be overcome by "a showing of particularized guarantees of trustworthiness." *Id.* at 818, 110 S.Ct. at 3148 quoting *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539.

The Court rejected the proposition that the guarantees of trustworthiness could be demonstrated by evidence corroborating the accusatory hearsay declarant's statement because corroboration was not a satisfactory basis for evaluating the truth in the absence of cross-examination. *Id.* at 822–23, 110 S.Ct. at 3149–50. The Court emphasized that the "firmly rooted" hearsay exceptions, such as excited utterances, were based on the circumstances existing when the statement was made; the statements were deemed "so trustworthy that adversarial testing would add little to their reliability." *Id.* at 820–21, 110 S.Ct. at 3148–49. The Court noted that the "particularized guarantees of trustworthiness required for admission under the Confrontation Clause" could be demonstrated only by evidence concerning the "totality of

the circumstances that surround the making of the statement and that render the declarant particularly worthy of belief." *Id.* at 820, 110 S.Ct. at 3148. As a result, the Court concluded, "unless an affirmative reason, arising from the circumstances in which the statement was made, provides a basis for rebutting the presumption that a hearsay statement is not worthy of reliance at trial, the Confrontation Clause requires exclusion of the ... statement." *Id.* at 821, 110 S.Ct. at 3149. The Court declined to establish a "fixed set of procedural prerequisites to the admission of such statements at trial," preferring that there be a case-by-case assessment based on the "totality of the circumstances." *Id.* at 818–19, 110 S.Ct. at 3148–49.

The majority opinion in the case before us describes the factors that indicate "particularized guarantees of trustworthiness" in terms of specific details of the interview. There are three additional factors, however, that are of concern in this case. First, the statement was made to a law enforcement officer during an investigatory interview when the focus was on appellant. Second, the interview involved a young child, implicating particular concerns as to suggestibility or manipulation. Third, the videotape omitted the 20–minute "rapport" session that preceded the child's accusatory statements, raising questions as to what the officer said to the child immediately before she made the accusations.

Although our Court has not established a *per se* rule of exclusion for accusatory hearsay statements made to law enforcement officers, we have noted that such statements "must always be viewed with suspicion." *United States v. Casteel,* 45 MJ 379, 382–83 (1996) (military judge properly exercised discretion to admit accusatory hearsay testimony based upon specific factors in case). The reason for such skepticism in terms of the hearsay rule is that "criminal investigators ... often 'are not merely observing and evaluating but are seeking to build a case to prove guilt.'" *United States v. Guaglione,* 27 MJ 268, 274 (CMA 1988), quoting *United States v. Cordero,* 22 MJ 216, 223 (CMA 1986).

The problem of using a law enforcement interview is compounded in a child sexual abuse case because of the particular susceptibility of young children to suggestion and manipulation in the interview process, an issue which has been noted by a number of commentators. *See, e.g.,* Myers, *Taint Hearings for Child Witnesses? A Step in the Wrong Direction,* 46 Baylor L.Rev. 873, 916 and n. 206 (Fall 1994); Anderson, Note, *Assessing the Reliability of Child Testimony in Sexual Abuse Cases,* 69 S. Cal. L.Rev. 2117, 2146 (Sept.1996). It is essential that any contact with the child, including a "rapport" session, not taint a subsequent interview. In this regard, the fact that a videotape was made of the interview, but not of the rapport session that immediately preceded it, could have raised serious questions about the guarantees of trustworthiness of this interview.

In this case, however, defense counsel—who had ample opportunity to cross-examine the interviewing officer about the rapport session—chose to focus on the content of the interview and raised no questions about the conduct of the rapport session. As a result, it is understandable that counsel on appeal has not identified anything in the record about the rapport session that would undermine the other evidence relied upon by the military judge in holding that there were sufficient guarantees of trustworthiness to admit the statement.

The military judge conducted a detailed hearing pursuant to Article 39(a), Uniform Code of Military Justice, 10 USC § 839(a), on admissibility of the videotape and concluded that the questions in the interview were "not leading or overly suggestive" and that the tape had "circumstantial guarantees of trustworthiness." While appellant has raised generalized Sixth Amendment concerns before this Court, he has not identified specific aspects of the interview that were accusatory, suggestive, or manipulative, or that would otherwise require us to hold that the military judge erred. Under the foregoing circumstances, I agree with the majority that the military judge did not err in holding that the videotape was admissible.

The concerns I have raised about use of law enforcement interviews and failure to provide a complete videotape of the pre-interview discussion are not intended to question the integrity of the law enforcement officers in this case or in general. These concerns reflect the Supreme Court's admonition that accusatory hearsay statements are presumptively excluded under the Confrontation Clause and that any such statements admitted into evidence must bear "particularized guarantees of trustworthiness."

It is often necessary for law enforcement officials to use investigative techniques that involve leading or accusatory questions, and investigators often are not in a position to videotape all or part of pre-interview discussions. Such circumstances do not reflect a lack of professionalism or care, but they clearly impact on the separate issue of whether an out-of-court statement has been obtained under circumstances that guarantee trustworthiness equivalent to the trustworthiness of traditional exceptions to the hearsay rule—exceptions designed to approximate, insofar as practical, the truth-seeking attributes of in-court confrontation and cross-examination. If a witness is truly unavailable and the prosecution relies upon a videotaped interview in circumstances where the evidence raises specific questions about the conduct or reliability of the interview, such questions place a heavy burden on the prosecution to demonstrate "particularized guarantees of trustworthiness." Moreover, if the investigators have made a videotape that omits a "rapport" session or similar activity without a reasonable explanation, that omission could well prove fatal to the admissibility of the interview if there are circumstances calling into question the conduct of the rapport session. In that regard, those persons involved in videotaping interviews of child witnesses should heed the admonition of the Court of Criminal Appeals not to "selectively videotape their contact with child witnesses—all of the interview should be taped. . . . ." *United States v. Cabral,* 43 MJ 808, 811 (1996).